Charles E. OATES and Chaytor Oates,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 17184.

United States Court of Appeals
Eighth Circuit.

April 23, 1963.

Otto Atchley of Atchley, Russell, Hutchinson & Waldrop, and Charles J. Hlavinka, Texarkana, Tex., filed and sub-mitted their brief to the Court without oral argument.

Harry Marselli, Atty., Tax Division, Dept. of Justice, Washington, D. C., made argument for the respondent and Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Lee A. Jackson, Robert N. Anderson, Michael K. Cavanaugh, Attys., Dept. of Justice, Washington, D. C., were with him on the brief.

Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Charles E. Oates, hereinafter called taxpayer, has petitioned this court for review of the decision of the Tax Court dated April 9, 1962 (opinion not reported) upholding the Commissioner's determination of a deficiency in income tax against him for the year 1956. Taxpayer's wife has been joined as a party solely because she joined with her husband in filing a joint income tax return.

The issue here presented is whether the Tax Court erred in sustaining the Commissioner's determination that the taxpayer is not entitled under §§ 165 and 166, I.R.C.1954,[1] to either a loss or bad debt deduction by reason of taxpayer's failure to establish the adjusted basis of the property with respect to which he claims the deduction.[2]

The claimed losses arise out of a joint venture for raising cattle entered into in 1949 between taxpayer and Fleet Magee. It is established that taxpayer provided $13,748.50 for the purchase of cattle to be used in this joint venture and that he received no return of income or principal from his investment. It is undisputed that a large, unspecified number of the cattle died during the winter of 1953 and that an indefinite number of cattle were sold to meet expenses.

The joint cattle were largely registered cattle and were registered in Mr. Magee's name and kept upon his premises. While as between the parties the original herd remained the property of the taxpayer and the taxpayer was entitled to one-half of the increase, the other half of the increase to belong to Mr. Magee, there was no record protection against the sale or mortgaging of the cattle to third persons by Mr. Magee.

Under the joint venture agreement, taxpayer's chief function was to furnish the money for the purchase of the original herd. The care of the herd was entrusted to Mr. Magee. Taxpayer devoted very little time to the supervision of the herd. Taxpayer, upon his return from foreign military service in 1954, learned that Mr. Magee had mortgaged all cattle upon the premises. Mr. Magee owned other cattle than the joint-venture cattle. There is nothing in the evidence to disclose how many, if any, of the joint-venture cattle were included in the mortgage.

Shortly after taxpayer learned of the mortgage of the cattle, he entered into prolonged negotiations with Mr. Magee for an accounting and settlement of his rights. Taxpayer and Mr. Magee on January 13, 1956, entered into a "Statement of Affairs" reading in part:

"Therefore, for and in consideration of the release and relinquishment by C. E. Oates of all his right, title, claim or interest in and to the property of the venture to the said Fleet Magee; and in order to wind up the venture and settle the affairs of the parties therein, I, Fleet Magee, do hereby acknowledge that I am justly and truly indebted to the said C. E. Oates, as an accounting of his interest in said venture, in the sum of $11,000.00."

Taxpayer contends that the joint venture was terminated in 1956 by the "Statement of Affairs" and that the amount of his unreturned investment constitutes a business loss or a loss incurred in a transaction entered into for profit deductible under § 165 or, in the alternative, constitutes a debt which became uncollectible in 1956 and deductible under the provisions of § 166.

The Tax Court correctly sets out the law to be applied in determining whether

---

1. Statutory citations, unless otherwise indicated, are to I.R.C. of 1954.

2. The Tax Court also disallowed taxpayer a bad debt deduction upon a loan he had made to Mr. Magee upon the ground that

the taxpayer did not establish the loan became worthless in 1956. This issue has not been raised in the petition for review and is not before us.

the taxpayer is entitled to the deduction claimed, stating:

"Under both section 165 and section 166 the basis for determining the amount of the deduction is to be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

"Section 1011 provides, in effect, that the adjusted basis for determining the gain or loss from the sale or other disposition of property shall be the cost of such property adjusted as provided in section 1016. Section 1016 provides, in part, that:

"  *   *   * Proper adjustment in respect of the property shall in all cases be made—

(1) for expenditures, receipts, losses, or other items, properly chargeable to capital account, *   *   *

(2) in respect of any period, since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, *   *.''

Taxpayer does not dispute the legal principles just set out but asserts that the Tax Court erred in holding that he had failed to establish his adjusted basis in the cattle and correlatively had failed to establish the amount of his loss.

The basis of the Tax Court's decision is thus stated by the Tax Court:

"The record discloses that prior to the termination of the joint venture a portion of the herd died as a result of several harsh winters and that from time to time sales of cattle were made to meet current expenses. However, no evidence was offered by petitioner to show how many cattle died, how many cattle were sold or how much they cost. Periodic losses and sales of cattle must be considered in arriving at the petitioner's adjusted basis in the purchased cattle. The fact that such evidence may be difficult, if not impossible, to obtain does not relieve the petitioner of his burden. Burnet v. Houston, 283 U.S. 223 [51 S.Ct. 413, 75 L.Ed. 991] (1931). Accordingly, we hold that the petitioner has failed to establish his adjusted basis in the cattle he purchased and, correlatively, that he has failed to establish the amount of his loss or bad debt, if any. This holding makes it unnecessary for the Court to characterize the transaction as one of loss or bad debt or to determine the year of loss or worthlessness.''

The deductions here claimed, like other deductions from gross income, depend upon legislative grace and do not turn upon general equitable principles. Statutes authorizing tax deductions are to be strictly and narrowly construed. Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Estate of Luehrmann v. Commissioner, 8 Cir., 287 F.2d 10, 15; Greenspon v. Commissioner, 8 Cir., 229 F.2d 947, 954.

The taxpayer has the burden in the Tax Court of establishing the adjusted basis of the property with respect to which he is claiming a deduction. Burnet v. Houston, 283 U.S. 223, 227–228, 51 S.Ct. 413, 75 L.Ed. 991; Stock Yards Nat'l Bank v. Commissioner, 8 Cir., 153 F.2d 708, on remand 169 F.2d 39; Bennett v. Commissioner, 8 Cir., 139 F.2d 961, 965; Illinois Nat'l Bank v. United States, 7 Cir., 273 F.2d 231, 234; O'Neill v. Commissioner, 9 Cir., 271 F.2d 44, 50.

It is the function of the Tax Court to resolve disputed fact issues. Findings of the Tax Court cannot be upset unless they are clearly erroneous. Loco Realty Co. v. Commissioner, 8 Cir., 306 F.2d 207, 209; Schoenberg v. Commissioner, 8 Cir., 302 F.2d 416, 419.

The record here adequately supports the Tax Court's determination that the taxpayer has failed to establish his 1956 adjusted basis in the cattle which

he purchased. The only evidence in the record that any of the herd might have been on hand in 1956 is a rather indefinite assertion in the "Statement of Affairs" reading:

"Subsequently, due to declining market conditions and other matters, it was determined that the herd should not be sold at the end of the five year period, although some offspring have been sold from time to time to offset feed costs and other necessary expenses in keeping up the herd. The remaining cattle and offspring of the herd are at this time in the possession of Magee."

It is undisputed that many of the cattle died in 1953 and that some cattle were sold to pay upkeep expenses. Taxpayer estimated that the original herd consisted of more than 100 head of cattle. There is no evidence which even attempts to approximate the number of cattle that died or the number that had been sold, nor is there any basis for a determination of the number of joint-venture cattle remaining on January 1, 1956. Taxpayer had been on Mr. Magee's farm on a few occasions. He admitted that Mr. Magee had other cattle. Taxpayer offered no evidence which purported to identify any of the cattle on the farm in 1956 as part of the original joint-venture herd. On the other hand, Mr. Magee positively testified that none of the original cattle or their offspring remained in 1956; that as a result of a few bad winters many of the cattle had starved to death for lack of feed, and that he had to sell some of the cattle to pay expenses and that he had lost $60,000 in cattle ventures.

Section 165(a) permits deduction for loss during the taxable year. Regulations, § 1.165–6(d)(2) (1954 Code) provides:

"The loss sustained upon the death by disease, exposure, or injury of any livestock purchased and used in the trade or business of farming shall be allowed as a deduction under section 165(a). * * *"

Taxpayer's adjusted basis in the original herd must be reduced by making appropriate capital adjustments for cattle lost or sold prior to 1956. There is a wholly unsufficient evidentiary basis for any reasonable computation or estimate of taxpayer's adjusted basis in cattle that remained on January 1, 1956.

■ Taxpayer strongly urges that under the rule of Cohan v. Commissioner, 2 Cir., 39 F.2d 540, he is entitled to substantial relief despite the fact that he is unable to prove his adjusted basis. We believe that considerable discretion exists in the application of the Cohan rule, and that such rule should be applied only in cases where the taxpayer has clearly shown that he is entitled to some deduction and that uncertainty exists only as to the exact amount thereof. The Second Circuit in Chesbro v. Commissioner, 225 F.2d 674, points out that the Cohan case was reversed only because the lower court found that the taxpayer had made some allowable expenditures, yet had granted no relief therefor. In our present case the court did not find that the taxpayer was entitled to some deduction nor does the evidence compel such a conclusion.

■ In addition to the adjustments required to capital for prior sales and losses, the taxpayer was required to adjust his basis to reflect depreciation upon his herd. Section 1016 requires a basis adjustment for depreciation allowable. Absent evidence of even the approximate number of cattle remaining in 1956 and evidence as to the age, condition and quality of the cattle, no satisfactory evidence exists for determining depreciation allowable which must be considered in fixing the adjusted basis.

In Burnet v. Houston, relied upon by the Tax Court, the Supreme Court states:

"We cannot agree that the impossibility of establishing a specific fact, made essential by the statute as a prerequisite to the allowance of a loss, justifies a decision for the taxpayer based upon a consideration

only of the remaining factors which the statute contemplates. The definite requirement of § 202(a) (1) of the act is not thus easily to be put aside. The impossibility of proving a material fact upon which the right to relief depends, simply leaves the claimant upon whom the burden rests with an unenforcible claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof." 283 U.S., 228, 51 S.Ct., 415.

We are satisfied that the Tax Court reached a permissible conclusion upon the basis of the record before it when it determined that the taxpayer had failed to establish a right to a loss or a bad debt deduction upon the cattle joint venture for the taxable year 1956.

Affirmed.