Martin MAYRATH and Rose Mayrath, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 21891.

United States Court of Appeals Fifth Circuit.

Feb. 17, 1966.

J. Edwin Fleming, James K. Rushing, Cecil A. Ray, Jr., Dallas, Tex., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Sheldon S. Cohen, Chief Counsel, Glen E. Hardy, Atty., I. R. S., Jeanine Jacobs, Harry Baum and Jerome I. Chapman, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before JONES, Senior Judge,* and GEWIN and BELL, Circuit Judges.

JONES, Senior Judge.

In this petition for reversal of a decision by the Tax Court, 41 T.C. 582 (1964), Mr. Martin Mayrath contends that the Commissioner of Internal Revenue improperly disallowed a deduction on his tax return for 1956 and 1957 for research and experimental expenses. These expenses were incurred by the taxpayer in constructing a luxury house for his own occupancy in Dallas, Texas. Mayrath claims that many of the features built into this residence were experimental and that he intended to exploit

---

* Of the United States Court of Claims, sitting by designation.

these new features in the commercial market. The Government asserts that the record shows that the construction of the house was a personal expense and had no connection with taxpayer's trade or business. Several minor issues involving trade or business expenses and depreciation deductions are also included in this petition and will be discussed near the end of the opinion. These minor deductions involve the tax years 1955, 1956, and 1957. Mrs. Rose Mayrath joins in this petition solely because of the joint tax returns filed by this couple in the tax years here in dispute. For convenience, Mr. Mayrath will hereinafter be referred to as the "taxpayer" and "petitioner."

The deficiencies in income taxes paid amount to $5,687.23 for 1955, $33,029.13 for 1956, and $17,019.67 for 1957. The reason for most of the deficiencies in the latter two years is the disallowance of the deduction for research and experimental expenditures incurred while constructing the personal residence referred to above. We will deal with this issue first.

## RESEARCH AND EXPERIMENTAL EXPENDITURES

For a detailed discussion of the facts involved reference should be made to the opinion of the lower court: 41 T.C. 582 (1964). For our purposes a short summation will suffice. Mr. Mayrath graduated from college in 1932 and held various jobs until his father's death in 1939, at which time he took over operation of the family farm in Kansas. While running the farm he began experimenting with grain augers. In 1944 he entered the farm implements business in earnest with his brothers by building grain augers for sale. Mayrath's grain auger was patented in 1949 and he has since been granted patents on various other farm implements. During the tax years in question $485,000 of the $530,000 in gross receipts reported by taxpayer were derived from the corporations controlled by him which produce and sell his patented farm machinery.

In 1956 petitioner commenced construction of a personal residence in Dallas, Texas. At this time he and his wife and five children were residing in a small three-bedroom house on Cinderella Lane in Dallas. The new house was completed in 1957 and petitioner moved his family into this $287,474.11 luxury home at that time. Three years later, in 1960, petitioner sent several letters describing his new house to various metal manufacturers. This allegedly was done in the hope that these companies would be interested in marketing some of the supposed new features which petitioner had developed while constructing his house. As of the date of the Tax Court proceedings nothing had been done by either these independent companies or Mayrath himself in exploiting any of the features incorporated into his house. Petitioner still derives almost all of his income from his "farm implements" corporations; the remainder of his income coming from oil interests and other investments.

Mr. Mayrath contends that he was pursuing his inventive bent in the construction of his new house and that he definitely had the intention all along to commercialize on any of his ideas which proved worthwhile. Whether petitioner actually harbored this thought is important in determining if he was engaged in the "trade or business" of developing new techniques for housing construction.[1] Section 174 of the 1954 Internal Revenue Code[2] allows a deduction for

---

1. In his income tax returns for 1956 and 1957, taxpayer attempted to deduct a total of $174,797.77 for research and experimental expenses. He arrived at this figure by subtracting what it would have cost to build a conventional luxury house from his total cost of $287,474.11. He assumed that all the excess expenses over and above the cost of a conventional luxury house would be attributable to his research and experimentation.

2. Section 174, 26 U.S.C. § 174 (1958), provides in part:

 "A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable

research or experimental expenditures incurred "in connection with [taxpayer's] trade or business * * *." The Tax Court found that even though Mayrath is an inventor, since almost all of his patents were related to the farm implements business and none of them related at all to the business of housing construction, it was "completely unwilling to consider as a part of such trade or business his activities in building an 'experimental' house for his own family's occupancy * * *." The Tax Court also felt that petitioner's actions during and after the construction of his personal residence did not "bear out any intention to use the house or any of its features in the furtherance of a trade or business." The court then concluded that Section 174 "was intended to be used in the realistic and practical sense of a *going* trade or business—a condition which does not exist here."[3] At pages 589–590.

▪ In determining whether the taxpayer was engaged in a trade or business to which these alleged research or experimental expenditures could be connected, it is important to consider the "profit motive."[4] As was stated by the Tenth Circuit in Wiles v. United States, 312 F.2d 574, 576 (1962):

Certainly, the profit motive is the essence of any trade or business.

And where, as here, none of the taxpayers' reported income for the taxable years was derived from the claimed business, * * * nonprofitability is, to be sure, cogent evidence of the non-existence of the alleged business.

From the evidence presented by the taxpayer it seems unlikely that he undertook the construction of this luxury house as a business venture for profit rather than as a hobby. No research was done before the commencement of this costly construction to determine if a market in fact existed for the types of innovations petitioner had in mind. Scant records were kept during the construction process for use in any commercial application. And the taxpayer moved his large family into the house immediately upon completion and, apparently, forgot about taking any further steps towards profiting on his "housing experiments" until 3 years later—at about the same time that the Internal Revenue Service was auditing his income tax returns for these years in question. Furthermore, these belated efforts to turn his activities into a trade or business were "token" at best.

▪ The question of whether the taxpayer is engaged in a trade or business is one of fact, Higgins v. Commis-

---

to capital account. The expenditures so treated shall be allowed as a deduction.

\* \* \* \* \*

"(c) Land and other property.

"This section shall not apply to any expenditure for the acquisition or improvement of land, or for the acquisition or improvement of property to be used in connection with the research or experimentation and of a character which is subject to the allowance under section 167 (relating to allowance for depreciation, etc.) * * * but for purposes of this section allowances under section 167, * * * shall be considered as expenditures."

3. The Tax Court also concluded that these expenditures by the taxpayer were not of a research, or experimental nature as defined broadly in Section 1.174–2 of the Treasury Regulations. Two witnesses for the respondent testified that in their opin-

ion, whereas some of the ideas used in taxpayer's house might be unusual in residential construction, none were experimental or unique. They testifed that, for the most part, taxpayer's innovations were merely luxury items which he desired in his new home to meet his personal tastes. Since we decide this case on the basis of whether there was a "trade or business," there is no need to discuss this issue of "research or experimental."

4. Cf. Doggett v. Burnet, Commissioner, 62 App.D.C. 103, 65 F.2d 191 (1933); Coffey v. Commissioner of Internal Revenue, 141 F.2d 204 (5th Cir. 1944); White v. Commissioner of Internal Revenue, 227 F.2d 779 (6th Cir. 1955), cert. denied 351 U.S. 939, 76 S.Ct. 836, 100 L. Ed. 1466 (1956); American Properties, Inc. v. Commissioner of Internal Revenue, 262 F.2d 150 (9th Cir. 1958).

sioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941), and the lower court's finding on this question will not be disturbed unless clearly erroneous. Loco Realty Company v. Commissioner of Internal Revenue, 306 F.2d 207 (8th Cir. 1962).

There are several Tax Court decisions dealing with this question of trade or business in connection with deductions under Section 174. In Kenneth Reiner, 24 TCM 1005 (July 20, 1965), the Tax Court ruled that the taxpayer was entitled to a deduction for research and experimental expenses incurred while building a personal residence. The evidence, however, was very strong that the primary motive for the construction was "profit:" (1) There was an oral and a written agreement between the partners concerning the business venture of constructing an experimental residence. (2) Patent counsel was used continually during the construction process to keep records on all the potential patentable developments. At the time of the Tax Court proceedings in that case, 20 to 30 preliminary patent applications had been prepared, an additional 10 patent applications had been filed, and 2 patents had already been issued. (3) One person was employed full time to evaluate the market potential of the ideas being developed. (4) Because of the continual experimentation with the unfinished house, taxpayer was forced to purchase another residence rather than moving into this experimental home. Construction started in 1956 and as of 1963 the house was still being used strictly for research. (5)

One development is already being produced and sold. (6) Detailed records of expenses and materials used were maintained throughout the construction process. We feel that these numerous factors clearly distinguish the *Reiner* case from the matter now in question.[5]

The most recent Tax Court decision concerning Section 174 concerns a corporation which specializes in the manufacture and sale of locks and desired a research and experimental deduction for work on an isothermal air compressor. Best Universal Lock Co., Inc., 45 T.C. 1 (1965). The company's founder and inventive genius began experimenting sometime prior to 1956 on this compressor in the company laboratory and granted the company a nonexclusive license to manufacture and use the device. There was strong evidence that Mr. Best was working on this compressor solely for business purposes and that the company fully intended to exploit his developments. Therefore, this case is also distinguishable from Mr. Mayrath's situation. John F. Koons, 35 T.C. 1092 (1961) and Erwin G. Bailey, 22 TCM 1255 (1963), were also cited by respondent and petitioner, respectively, as supporting their side. However, we feel these latter two cases are not as applicable to our discussion as *Reiner* and *Best Universal Lock Co., Inc.*, and so no further treatment is necessary.

 In circumstances such as exist here, where there is a grave concern whether the expenses incurred by the taxpayer are personal rather than "in connection with his trade or business,"

5. The *Reiner* decision raised a point that would be of serious concern to us if we were to hold that the taxpayer does qualify under Section 174. That point is whether cost of constructing the experimental house, in excess of its residual value as an eventual personal residence, should be depreciated under Section 174 (c) or deducted under 174(a) as expenses. Mr. Mayrath, in his tax returns for 1956 and 1957, deducted as expenses in the tax year the excess of the construction costs over what, in his estimation, it would have cost to build a conventional luxury house. Respondent contends that Section 174(c) excludes the taxpayer from deducting the expenses incurred in building an experimental house, since a house is depreciable under Section 167. There is no necessity for us to reach this issue since we uphold the Tax Court's conclusion that taxpayer was not engaged in a trade or business.

it is entirely proper for the fact-finding tribunal to require adequate substantiation of the claim.[6] Section 262 disallows any deductions for "personal, living or family expenses,"[7] and so the court must be convinced by the taxpayer that his expenses are not, in reality, merely personal. Deductions from gross income are purely a matter of legislative grace and the statutory sections authorizing them "are to be strictly and narrowly construed." Oates v. Commissioner of Internal Revenue, 316 F.2d 56, 58 (8th Cir. 1963). The burden is always upon the taxpayer to prove that his expenses fall within "the deduction provisions of the statute." Hirsch v. Commissioner of Internal Revenue, 315 F.2d 731, 738 (9th Cir. 1963).

We conclude that the lower court was not clearly erroneous in deciding from the facts presented that Mr. Mayrath did not intend to profit from the work done in building his own personal "made-to-order" house and so his expenses were not connected with a trade or business. The Tax Court's decision to disallow all deductions to the taxpayer which were claimed under Section 174 is affirmed.

## DEDUCTIONS UNDER SECTION 162 FOR BUSINESS USE OF RESIDENCES

The petitioner also claimed deductions of $1,072.92 for 1955, $2,372.46 for 1956, and $1,265.40 for 1957 for alleged use of his three personal residences in his trade or business. One of these houses was located in California and was used to store the equipment and files which Mr. Mayrath had used in the early 1950's in a music business which he allegedly was engaged in with two other men. There appeared to be ample evidence, however, from which the Tax

Court could conclude that this was a music hobby of petitioner's, rather than a bona fide business venture. Similarly, the business nature of Mayrath's use of his two houses in Dallas was very unclear from the evidence. He claimed that one-half of the costs of operating his three-bedroom house on Cinderella Lane were attributable to his business in that he stored music equipment and files there and made telephone calls. Yet he and his family of seven lived in this same house. No serious effort was made by the taxpayer at the trial to even attempt to prove that the telephone calls were "business." We feel that the Tax Court was correct in disallowing these business deductions for lack of substantiation.[8]

Petitioner contends, however, that lack of substantiating evidence should not rule out the allowance of at least *some* of his claimed deductible expenses. For this proposition he relies on the rule laid down by Judge L. Hand in Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). This rule, in effect, requires the lower court to approximate the amount of taxpayer's deductible expenses whenever he cannot prove them with exactitude. Were it not for this rule, taxpayers who had definitely incurred *some* deductible business expenses but could not prove the amounts, would be denied *any* deduction. *Cohan,* however, is inapposite to Mr. Mayrath's situation since there is insufficient proof here that *any* of the uses of the personal residences were of a business nature. *Cohan* does not require the lower court to speculate as to what, if any, expenses were connected with a trade or business. Until the taxpayer proves that *some* of his expenses were definitely deductible, the fact-finder need not approximate a certain minimum allowable deduction. Williams v. United States, 245 F.2d 559

---

6. Cf. White v. Commissioner of Internal Revenue, supra, N. 4; American Properties, Inc. v. Commissioner of Internal Revenue, supra, N. 4.

7. 26 U.S.C. § 262 (1958).

8. Cf. Williams v. United States, 245 F.2d 559 (5th Cir. 1957); Hirsch v. Commissioner of Internal Revenue, 315 F.2d 731 (9th Cir. 1963); Oates v. Commissioner of Internal Revenue, 316 F.2d 56 (8th Cir. 1963).

(5th Cir. 1957); Wiles v. United States, 312 F.2d 574 (10th Cir. 1962); and Oates v. Commissioner of Internal Revenue, 316 F.2d 56 (8th Cir. 1963).

Referring to the research and experimental expenses on taxpayer's new luxury house, discussed in part I of the opinion, taxpayer would also have us apply the *Cohan* rule to allow him at least some of his claimed deductions under Section 174. However, his contention fails for the same reason as that given above. He must first prove that his expenses are truly deductible before approximation will be made as to amount.

## DEPRECIATION OF TAXPAYER'S WORKSHOP

■ Mr. Mayrath also built a workshop adjacent to his new luxury home at an alleged cost of $42,000. The workshop is a one-story, 20- by 40-foot concrete and glass structure which petitioner claims he uses for business, i. e., work on his experimental house, on his music business, and his farm implements business. The taxpayer claimed a depreciation deduction for this workshop in 1956 and 1957 based on a useful life of 20 years. The Tax Court felt that the business use of the workshop, its actual cost, and its useful life were all completely unsubstantiated by any documentary evidence, and so disallowed the entire depreciation deduction.[9] Here again we feel that the taxpayer has failed to carry the burden of proving to the satisfaction of the trier of fact that any of the uses of the workshop were connected with a trade or business, and not purely a hobby. And until the taxpayer meets this burden, the rationale of *Cohan* is inapplicable. We therefore affirm the Tax Court in disallowing the complete deduction for depreciation of the workshop.

The decision of the Tax Court is, in all matters, affirmed.

9. Section 167 of the Internal Revenue Code, 26 U.S.C. § 167 (1958), provides in part:

"There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, * * *."