Seymour Goldrosen v. Commissioner. Edward Mitnowsky v. Commissioner.
Goldrosen v. Commissioner
Docket Nos. 4795-68, 4802-68.
United States Tax Court
T.C. Memo 1970-260; 1970 Tax Ct. Memo LEXIS 99; 29 T.C.M. (CCH) 1146; T.C.M. (RIA) 70260; September 10, 1970, Filed. *99 Edwin Fradkin and Harvey R. Zeller, 744 Broad, Newark, N.J., for the petitioners. John J. O'Toole, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the income tax of petitioners for the taxable year 1964 and additions thereto as follows: Income Tax
Additions to Tax,Sec. 6653(a),I.R.C. 1954
Seymour Goldrosen Docket No. 4795-68
$193.00
$ 9.65
Edward Mitnowsky Docket No. 4802-68
435.80
21.79
These cases were consolidated for trial. The issues presioners incurred a net operating loss for the taxable year 1964 so as to entitle the petitioners to deduct their proportionate shares of such loss on their individual returns; and (2) whether petitioners are liable for an addition to tax under section 6653(a), I.R.C. 1954. Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. Petitioner Seymour Goldrosen ("Goldrosen") resided in Union, New Jersey, during 1964 and at the time he filed his petition herein. Petitioner Edward Mitnowsky ("Mitnowsky") resided in Clark, New Jersey, during 1964 and at the time he filed his petition herein. Each petitioner *100 filed his individual income tax return for the calendar year 1964 with the district director of internal revenue, Newark, New Jersey, on August 13, 1965. From 1952 until January 9, 1964 the petitioners were equal partners in a business known as Samuel Pitzer & Son ("Piltzer"). The partnership was engaged in the buying and selling of meat and dairy products, both wholesale and retail. Its customers were stores, institutions, hospitals and schools. It also made sales to persons who came to its place of business off the street. In June of 1963 Piltzer acquired and thereafter operated a retail food store or supermarket known as Getmore Discount Center. The partnership employed the accrual method of accounting. Its fiscal year for tax purposes ended April 30th. The fiscal year beginning May 1, 1963 was terminated on January 9, 1964, when the petitioners individually and as partners filed a petition in bankruptcy. The Federal income tax return of the partnership for the period was filed on August 13, 1965. During the spring or summer or 1963 the petitioners began to expand the volume of the partnership's business. At about the same time, as the partnership's cash sales were increasing, *101 the petitioners began to gamble with the cash receipts of the business at "the race track" and to spend such receipts for other forms of personal entertainment. And, though the sales volume of the partnership business increased, the petitioners became unable to meet the demands of creditors. In order to obtain immediate cash for further gambling and other personal activities as well as to meet the claims of those creditors who were pressing for payment the petitioners began to sell merchandise at times below cost to some of their customers on condition that payment be made in cash. The petitioners then used the cash to gamble with at the race track and otherwise to indulge themselves as "goodtime Charlies." The record does not establish that all cash sales were below cost or that the difference between cost and sales price was substantial in those instances where sales were made below cost. Petitioners kept no record of the amounts received by reason of their cash sales. Most of the cash received by them in this manner was not deposited in a bank account but was kept at the business premises at first in a safe and later either in the refrigerator or above the partitions in a washroom. *102 Beginning in the summer of 1963 until December 1963, petitioners went to the race track three or four nights a week, wagering in excess of $1,000 on each occasion. Petitioners kept no record of their winnings or losses. Sometime during the first week in December, 1963, the race track frequented by petitioners closed. On December 13, 1963, the petitioners went to Las Vegas, Nevada, in order to gamble and otherwise indulge themselves. In the course of a weekend 1148 the petitioners lost an amount of not less than $51,000 at various casinos. During the period between the summer of 1963 and January 9, 1964, the credit sales of the partnership were recorded on accounts receivable cards. These cards were taken on the weekends to a part-time bookkeeper employed by the partnership, Mrs. Gladys Helfgott, who posted the sales over the weekend in an accounts receivable ledger. The cards were then picked up by one of the partners on Monday morning. Though Mrs. Helfgott was given records to post in respect of some cash sales, the bulk of the partnership's cash sales were not reported to her nor were they otherwise recorded in the books or records of the partnership. On January 9, 1964, Goldrosen *103 and Mitnowsky individually and as co-partners trading as Samuel Pitzer and Son, and also using the trade name Getmore Discount Center, filed a petition in bankruptcy in the United States District Court for the District of New Jersey. On January 30, 1964, they were duly adjudged bankrupt. On September 18, 1964, after objection to a discharge made by both the trustee and United States Attorney, the referee in bankruptcy denied to Goldrosen and Mitnowsky a discharge in bankruptcy. As of the time of trial herein petitioner Goldrosen owed substantial amounts arising from the bankruptcy, he was employed "in the vacuum cleaner repair line" and creditors were being paid by garnishment of his salary. His 1964 wages or salary reported on his 1964 return filed August 13, 1965 amounted to $4,085. Mitnowsky's 1964 return filed on the same date disclosed that his principal business activity in 1964 was "Cab Driver" and that his total net profit from that activity during the entire year was $4,163. Louis Brief ("Brief"), a certified public accountant, was the accountant for the trustee in bankruptcy. He examined the books and records, including the general ledger, of Samuel Piltzer and Son. His *104 function was to draw up a balance sheet and organize the accounts receivable. Although Brief had no records or knowledge of the cash sales or withdrawals from the business, he prepared work sheets for the period May 1, 1963 to January 9, 1964 which showed a partnership loss in the amount of $400,724. Bernard Kalman ("Kalman"), a certified public accountant, was the accountant for Piltzer since 1952. He kept books for the partnership consisting of a cash receipts book, based only on bank deposits, a cash disbursement book, based only on stubs in the partnership check book and cancelled checks, and a general ledger. He prepared a schedule of accounts payable of Piltzer as of January 9, 1964 from an unverified list of creditors submitted to him by the attorneys for the bankrupts. He used their schedule in preparing the books, records, and tax returns of the taxpayers for the period herein involved. Kalman prepared the return of the partnership for the short period May 1, 1963 to January 9, 1964. The return indicated a loss in the amount of $262,176.61 based on the postings in the cash receipts and disbursements books. In preparing the 1963 partnership tax returns, Kalman was advised *105 by tax counsel for petitioners, a Mr. Weinberg, to debit the drawing accounts of Goldrosen and Mitnowsky $50,000 each and to credit sales for an additional $100,000. Without this journal entry the partnership loss determined by Kalman for the purpose of making the partnership return for 1963 would have been $362,176.61. In his return for the taxable year 1964 Goldrosen claimed a loss of $131,088.30 in respect of his interest in the partnership. Mitnowsky claimed a loss of $131,088.31 in respect of his interest in the partnership. In his notices of deficiency the Commissioner disallowed the respective loss deductions "for the reason that it has not been established that the partnership sustained a loss." Also, the Commissioner claimed an addition to the tax of both petitioners pursuant to section 6653(a), I.R.C. 1954. Opinion RAUM, Judge: 1. The Commissioner seeks to deny petitioners the benefit of the loss claimed in respect of the operation of their partnership during its taxable year 1963. He contends that no deductible loss is allowable to the petitioners because (a) they have failed to carry their burden of showing by adequate records or testimony that a loss was sustained *106 by the partnership business, and (b) no allowance can be made for the accounts payable of the partnership in determining the cost of goods sold figure used in computing the partnership loss since such accounts were incurred at a time when the partnership was insolvent and there was no reasonable expectation 1149 that they would be paid. See Millar Brainard, 7 T.C. 1180, remanded in an unreported order pursuant to stipulation, 47-2 USTC 9306 (C.A. 7). Since we agree with the Commissioner's first argument we do not reach the second. The petitioners have claimed a deduction of their proportionate shares of the alleged loss of their partnership business shown on the partnership return for the taxable year 1963 as $262,176.61. They have the burden of proving that this loss was incurred by the partnership. Burnet v. Houston, 283 U.S. 223; Oates v. Commissioner, 316 F. 2d 56 (C.A. 8), affirming a Memorandum Opinion of this Court. We hold that petitioners have failed to carry that burden. Beginning in the summer of 1963 and ending in January 1964, when they filed their petition in bankruptcy, the petitioners diverted large and undetermined *107 sums of cash from the partnership business and used the cash for gambling and other personal pursuits. As a consequence, the business became unable to meet the demands of creditors. By January 9, 1964, scarcely six or seven months after petitioners began diverting large sums of cash from the business, they, and the partnership, were in bankruptcy. During the period in which petitioners were siphoning funds out of the partnership they kept virtually no records of the partnership's cash sales. Nor did they deposit any substantial amounts of cash in any of the partnership's bank accounts. Instead, as cash sales were made, the cash was secreted at the business premises in such places as the refrigerator and a washroom so as to keep it readily available for use at the race track or elsewhere. Moreover, no records were kept of the petitioners' winnings or losses at the track or elsewhere. We were told only that between the summer of 1963 and December of that year they went to the track three or four times a week, gambling in excess of $1,000 on each occasion. When the track closed in the first week of December petitioners made a weekend trip to Las Vegas where they lost in excess of $51,000. *108 To substantiate the loss claimed by petitioners they submitted worksheets prepared by their accountant and the accountant for the trustee in bankruptcy. The record shows, however, that the statements submitted to substantiate the claimed loss do not take into account the great bulk of the cash sales of the partnership during the period in issue. Furthermore, the figure for the accounts payable used to determine the cost of goods sold in computing the alleged loss was prepared from an admittedly unverified list of creditors. Thus, since the petitioners have not established with any certainty either the total sales of the partnership or the cost of those sales, we can place no confidence in the resulting figure which they claim to be the partnership loss. Petitioners point out that an adjustment to the sales figure was made to reflect withdrawals in the amount of $100,000 by petitioners, and that in the absence of this adjustment the loss would have been $100,000 greater. Though this adjustment no doubt accounts for some of the unreported cash sales of the partnership, there is nothing in the record to show the accuracy of this figure. On the contrary, the figure was admittedly *109 a "plugged" figure which was used by the partnership's accountant (Kalman) on the advice of Mr. Weinberg, tax counsel to the partnership who was not a witness before us. Moreover, Kalman testified that he did not know the basis for the figure, and that he had no idea whether the appropriate figure should be $100,000, or $200,000, or $300,000. Further, Goldrosen had no convincing recollection as to the amounts of the unrecorded cash sales diverted by him or Mitnowsky. Finally, Mitnowsky did not testify at the trial. Thus, we are unable to conclude that the $100,000 adjustment to the income of the partnership was sufficient to account for the amounts diverted by petitioners to their own uses or that the loss claimed by petitioners was accurate as a result of this adjustment. Though the denial of the petitioners' claim to a deductible loss may perhaps appear harsh in the present circumstances, we repeat that the burden of proof is on the petitioners, and we cannot determine on this record whether the partnership in fact sustained a net loss on its total business operations during the tax period in controversy. As the Supreme Court stated in Burnet v. Houston, supra at 223, *110 The impossibility of proving a material fact upon which the right to relief depends simply leaves the claimant upon whom the burden rests with an unenforceable claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof. 1150 2. Section 6653(a) Addition to Tax. The Commissioner determined that petitioners were subject to the imposition of a five percent addition to tax pursuant to section 6653(a), I.R.C. 1954, * for negligence. The petitioners have the burden of proof as to their liability under this section, Joseph Marcello, Jr., 43 T.C. 168, 182, and on the record here we conclude that this burden has not been met. *111 It is clear that the petitioners failed to keep adequate books and records with respect to the cash sales of the partnership and that they concealed such information from their bookkkeeper and accountant. Since their underpayment as determined herein was a consequence of such negligence, the addition to tax under section 6653(a) must be approved. Decisions will be entered for the respondent. Footnotes
*. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩