Manuel Antuna and Helen K. Antuna v. Commissioner.
Antuna v. Commissioner
Docket No. 662-68.
United States Tax Court
T.C. Memo 1970-290; 1970 Tax Ct. Memo LEXIS 70; 29 T.C.M. (CCH) 1343; T.C.M. (RIA) 70290; October 12, 1970, Filed J. Arthur McNamara, 20 Buray. Valhalla, N. Y., for the petitioners. Marvin A. Fein, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in petitioners' income taxes for the taxable year 1964 in the sum of $4,384.29. This deficiency arises from *71 the partial disallowance by respondent of a net operating loss claimed for the year 1960. The sole issue for decision is whether petitioners are entitled to a deduction in 1960 under either sections 165 or 166 [1] for the loss or worthlessness of an account receivable which resulted from Cuban expropriations during such year. Findings of Fact Some of the facts have been stipulated. The stipulation of facts, together with exhibits attached thereto, is incorporated herein by this reference. Prior to December 1959 Manuel Antuna (hereinafter referred to as petitioner) was a resident and citizen of Cuba. His wife, Helen K. Antuna, who was born in America and possesses United States citizenship, is a party to this action solely because she filed a joint return with her husband. Petitioners resided in Fort Lauderdale, Florida, at the time the petition in this case was filed. For the taxable year 1964 petitioners filed their Federal income tax return with the district director of internal revenue, Manhattan, New York. Petitioner derived a substantial portion of his income between *72 1936 and 1960 from commissions earned as an insurance agent of G. F. Kohly, S.A. (hereinafter referred to as Kohly), a Cuban insurance agency having offices in New York City and Cuba. Commissions received by petitioner were attributable to the sale of insurance to six sugar mills in Cuba owned by relatives of petitioner. Commissions earned prior to 1959 averaged approximately $25,000 per year and were generally remitted periodically to petitioner in the year the premiums were collected. In December 1959, as a result of political events associated with Fidel Castro's rise to power, petitioner fled to the United States. At the time of his departure, however, petitioner entertained the hope that the unstable political situation in Cuba would shortly improve, at which time he expected to resume his residence and business activities in Cuba. Petitioner returned to Cuba in August 1960 for the purpose of recovering certain property left behind, but returned to the United States after 3 days without success. Following this short excursion, petitioner did not again return to Cuba. In December 1959, shortly after petitioner's departure from Cuba, an accountant, one Morales, filed petitioner's *73 Cuban income tax return for 1959 and paid the taxes shown therein with funds of petitioner still remaining in Cuba. Since he had anticipated returning to Cuba, petitioner made no effort at the time he left Cuba in December 1959 to collect unpaid insurance commissions still owing to him. Nor did he at any time attempt to recover amounts due him from the Kohy office in New York or pursue legal remedies to enforce their collection. G. F. Kohly, president of the above insurance agency, died sometime after October 13, 1965. On their Federal income tax return for the year 1960 petitioners claimed a total loss of $58,322.50 in connection with the alleged confiscation of business and nonbusiness assets in that year. This figure included an account receivable from Kohly for commissions allegedly earned but unpaid as a result of confiscatory action of the Cuban government. Respondent has allowed the 1344 claimed losses to the extent of $32,000. The only item at issue in this case is petitioner's claimed loss of "commissions receivable" in the sum of $15,000, the remaining items having been disposed of by the parties prior to trial. Opinion Petitioner has deducted as a loss under section *74 165 the sum of $15,000 allegedly owed to him by Kohly, a Cuban insurance agency. Respondent contests both the existence and the deductibility of this receivable. With respect to the latter contention, respondent takes the position that section 166, rather than section 165, is the applicable section in this case. It is further argued that the requirements of section 166 were not satisfied since petitioner has neither established the worthlessness of the receivable in 1960 nor its statutory basis for purposes of ascertaining the amount of the deduction. As to the applicable section, the evidence in the record, consisting for the most part of petitioner's unsupported testimony, appears to bear out respondent's assertion that section 166 is the statutory provision in point. According to petitioner's testimony, the receivable in question was not itself the subject of seizure by the Cuban government; instead, it appears that the receivable became worthless as a result of confiscatory action taken against Kohly, petitioner's creditor. Petitioner has variously testified that the assets of Kohly were "confiscated" and that payment of its debts were "frozen" by the Cuban government. Accordingly, *75 the unambiguous and specific provisions of section 166, dealing with deductions for bad debts, take precedence over the general loss provisions of section 165. Spring City Co. v. Commissioner, 292 U.S. 182 (1934). In the instant case, however, we need not decide which of the abovecited provisions is applicable since petitioner's failure to comply with a requirement common to both sections is plainly dispositive of the issue before us. Section 165, [2] cited by petitioner, provides, in general, for the deductibility of losses sustained during the taxable year. Section 166, [3] similarly, grants a deduction for debts which become worthless during the taxable year. The size of the deduction, in each case, is determined by reference to the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of the property. See sections 165(b) and 166(b). There is ample authority for the proposition that the basis of property in the case of items such as unpaid salaries or commissions cannot exceed amounts attributable to such items previously reported by the taxpayer as income. Sec. 1.166-1(e), Income Tax Regs.; Oscar T. Crosby, 27 B.T.A. 1234 (1933); *76 John L. Seymour, 14 T.C. 1111 (1950); and Palmer Hutcheson, 17 T.C. 14 (1951). The record is wholly deficient in this respect. While petitioner has referred, in the course of testimony, to the filing of a Cuban income tax return by his accountant in Cuba during the latter part of December 1959, he has not established, and, indeed, has conceded ignorance of, the contents of this return. It is possible, if not probable, that the unpaid commissions were not included in income on this return.[4] Nor were the commissions reported as income in any United States return filed by petitioner following his arrival in this country in December 1959. While we are cognizant of the difficult circumstances surrounding petitioner's hasty departure from Cuba, petitioner cannot on this basis be relieved from satisfying his burden of proof. Oates v. Commissioner, 316 F. 2d 56 (C.A. 8, 1963), affirming a Memorandum Opinion of this Court.. Petitioner has produced no 1345evidence with respect to his basis in the receivable and has introduced little more than his own vague testimony as to the existence of the account receivable. Nor has he offered a satisfactory *77 explanation for his failure to proceed against the New York branch of Kohly. *78 For the above-stated reasons, particularly petitioner's failure to establish his basis in the account receivable, we are constrained to uphold the disallowance of the claimed deduction under either of the above-cited sections for the year 1960. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
2. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. ↩
3. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly Worthless Debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially Worthless Debts. - When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. ↩
4. We need not decide whether inclusion of an item in a foreign income tax return furnishes a basis for purposes of the bad debt or loss provisions, as does inclusion in a United States income tax return. Since petitioner has failed to establish the contents of his return, we do not reach this question.↩