T.C. Memo. 2010-162

UNITED STATES TAX COURT

FOY D. AND BARBARA F. SMITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1202-06.                    Filed July 27, 2010.

Foy D. and Barbara F. Smith, pro sese.

<u>Rebecca Dance Harris</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined deficiencies of $966 and
$3,909 with respect to petitioners' 2002 and 2003 Federal income
tax, respectively.  After concessions,[1] the issues for decision

---

[1]At the conclusion of the trial, petitioners asserted for
the first time that they were entitled to certain itemized
deductions that they had not claimed on their 2003 return.  The
                                        (continued...)

are: (1) Whether petitioners are entitled to depreciation deductions for 2002 and 2003 in amounts greater than those respondent allowed; (2) whether petitioners are entitled to a $34,000 ordinary loss for 2003; (3) whether petitioners are entitled to any additional itemized deduction for home mortgage interest for 2003 beyond that conceded by respondent; (4) whether petitioners are entitled to deduct additional amounts attributable to loan transaction charges for rental real estate for 2003; and (5) whether petitioners are entitled to any additional itemized deductions for charitable contributions for 2003 beyond those respondent conceded.

Unless otherwise noted, all section references are to the Internal Revenue Code of 1986, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar.

---

[1](...continued)
Court directed the parties to confer after trial and to file status reports concerning petitioners' itemized deduction claims. After reviewing petitioners' substantiation, respondent concedes that petitioners are entitled to deductions for State and local taxes of $1,042, mortgage interest of $4,423, and charitable contributions of $9,602. Respondent was unwilling to concede $626 of petitioners' claimed mortgage interest deduction and $948 of petitioners' claimed charitable contribution deductions. We accordingly address those issues hereinafter.

## FINDINGS OF FACT

Some facts are stipulated and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.  At the time the petition was filed, petitioners resided in Tennessee.

Allocation of Value Between Land and Buildings

Petitioners owned several rental real estate properties as well as a mobile home during the years at issue.  These properties were all in Rutherford County, Tennessee, and included properties at the following addresses:  211-213 Edwards Street; 5116 A and B Colonial Circle; 2801 and 2803 Reynolds Drive; 2807 and 2809 Reynolds Drive; 107 and 109 Hickory Street (Hickory Street properties); 301, 303, and 305 Pearcy Street (Pearcy Street properties); and 1511 A and B Harrell Street (Harrell Street property).  Petitioners claimed depreciation deductions with respect to the properties based on allocations of value between the land and the buildings that were estimated by their return preparer, and for the mobile home on the basis of a 10-year life.  Respondent determined in a timely notice of deficiency that $2,353 and $1,863 of depreciation deductions for 2002 and 2003, respectively, should be disallowed because the allocations to building values were excessive.  The notice further disallowed $636 and $364 of depreciation deductions for 2002 and 2003, respectively, with respect to the mobile home.

HVAC Units

Petitioners installed new HVAC units in the Harrell Street and Hickory Street properties in 2002 and 2003 at a cost of $3,813 and $6,990, respectively. Petitioners claimed deductions equal to the full cost of each unit as a "repair" expense in the year of installation. The notice of deficiency disallowed these deductions, allowing instead depreciation deductions with respect to the units of $121 and $139 for 2002 and 2003, respectively, for the Harrell Street property, and $160 for 2003 for the Hickory Street properties.

Pearcy Street Improvements

Around 1996 or 1997 petitioners made improvements to the Pearcy Street properties, including replacing roofs, installing new carpets, and painting walls. Petitioners claimed depreciation deductions attributable to these improvements of $1,332 for both 2002 and 2003, and respondent disallowed $73 of these amounts for each year.

Trust Dealings

In 1998 petitioners purchased an "offshore trust package" from Global Prosperity Group. In connection with this purchase, petitioners paid $5,234 in September 1998 to Innovative Financial Consultants for specified trust materials and made a wire transfer of $32,000 in October 1998 to an account chosen by Global Prosperity Group. Innovative Financial Consultants

represented to petitioners that they could lawfully avoid income taxes by placing their income and assets in an offshore trust.

In 2003 respondent informed petitioners that the promoters of an abusive trust scheme marketed under the name of Innovative Financial Consultants had been indicted for, and one of the promoters had already pleaded guilty to, conspiracy to defraud the United States. Petitioners claimed an ordinary loss of $34,000 for 2003 that they maintain is attributable to their dealings with Innovative Financial Consultants and Global Prosperity Group. The notice of deficiency disallowed the loss.

OPINION

Allocation of Value Between Land and Buildings

Respondent disallowed depreciation deductions totaling $2,353 and $1,863 for 2002 and 2003, respectively, on the grounds that petitioners had apportioned too much of the total value of certain residential rental real estate properties[2] to depreciable improvements rather than to nondepreciable land. See sec. 1.167(a)-2, Income Tax Regs.

Under section 1.167(a)-5, Income Tax Regs., the depreciation allowance must be based on the proportionate value of the building in relation to that of the land at the time of acquisition. Respondent's determination apportioned value

---

[2]The parties do not dispute that all of petitioners' real estate properties at issue (except a mobile home, discussed hereinafter) were residential rental properties.

between land and buildings on the basis of local property tax assessments for 2001 which made such an apportionment. Petitioners bear the burden of proving error in respondent's determination. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); see also INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).[3]

Except in the case of the Harrell Street property, which was acquired in 2002, the 2001 local property tax assessments on which respondent relied are in evidence. Petitioner Foy D. Smith (petitioner) testified that the allocations on the returns were made by petitioners' return preparer, who had extensive experience in the area and made his calculations on the basis of a standard he used for other properties in the area. Petitioners offered no further particulars regarding the basis for their return preparer's allocations.

On this record, petitioners have failed to demonstrate error in respondent's determination. We are persuaded that the allocations made on the basis of the 2001 local property tax assessment are the only reliable estimates of the depreciable

[3]Petitioners have neither claimed nor shown entitlement to any shift in the burden of proof to respondent under sec. 7491(a) with respect to any factual issues in this case. See H. Conf. Rept. 105-599, at 239-242 (1998), 1998-3 C.B. 747, 993-996. (explaining that the taxpayer has the burden of proving that the conditions for invoking sec. 7491(a) have been met).

portions of the real properties at issue. We therefore sustain respondent's determination to disallow petitioners' claimed depreciation deductions to the extent of $2,353 and $1,863 for 2002 and 2003, respectively.

Mobile Home Depreciation

Respondent disallowed $636 and $364 of petitioners' claimed depreciation deductions in 2002 and 2003, respectively, for a mobile home. Respondent determined that the mobile home is "residential rental property" which has a recovery period of 27.5 years. See sec. 168(c). Petitioners contend that they are entitled to depreciate the mobile home over 10 years.

"Residential rental property" is defined, for the purposes of allowance for depreciation, as "any building or structure if 80 percent or more of the gross rental income from such building or structure for the taxable year is rental income from dwelling units." Sec. 168(e)(2)(A)(i). Where a mobile home has been permanently affixed to the land, the mobile home may be "residential rental property" and thus depreciable using a 27.5-year recovery period. Rupert v. Commissioner, T.C. Memo. 2001-179, affd. 57 Fed. Appx. 212 (5th Cir. 2003). Petitioners offered no evidence that the mobile home was readily movable in a manner that would distinguish it from the mobile home at issue in Rupert. We accordingly sustain respondent's determination that

petitioners' mobile home was "residential rental property" depreciable over 27.5 years.

Depreciation of the HVAC Units

Respondent disallowed the $3,813 and $6,990 deductions petitioners claimed in connection with the installation of HVAC units in 2002 at the Harrell Street property and in 2003 at the Hickory Street properties. Respondent determined that the amounts petitioners claimed as "repair" expenses must be depreciated and recovered over a period of 27.5 years, the depreciation period of the rental properties at which the HVAC units were installed. Petitioners contend that the expenditures may be deducted completely in the year that the HVAC units were placed in service or, alternatively, that the units should be depreciated over a period shorter than 27.5 years.

Generally, additions to, or improvements of, property are depreciated in the same manner as the underlying property. See sec. 168(i)(6). The same recovery period and method must be used, with the recovery period commencing on the later of the date when the addition or improvement is placed in service or the date when the underlying property is placed in service. Id. The residential rental real properties at which the HVAC units were installed are section 1250 class property because they are real property, depreciable, and do not meet the requirements of section 1245(a)(3)(C). See sec. 1250(c).

Neither section 168 nor the regulations thereunder define additions to, or improvements of, property.  The caselaw looks to the regulations promulgated under the former investment tax credit; i.e., section 1.48-1, Income Tax Regs.  Hosp. Corp. of Am. v. Commissioner, 109 T.C. 21, 56 (1997).  The distinction turns on whether the property being considered is "tangible personal property" (section 1245 property) or "structural components of the buildings" (section 1250 property).  See id. at 56.  The regulations promulgated under section 1245 define tangible personal property with regard to section 1.48-1, Income Tax Regs.  Sec. 1.1245-3(b)(1), Income Tax Regs.  The regulations promulgated under section 1250 incorporate the meanings for "building" and "structural components" as defined by section 1.1245-3(c), Income Tax Regs., which in turn incorporate the meanings for those terms as defined by section 1.48-1(e), Income Tax Regs.  Sec. 1.1250-1(e)(3)(i), Income Tax Regs.  The interaction of the statute and the regulations indicates that Congress intended to retain the test under the former investment tax credit for the purpose of determining whether property is section 1245 property or section 1250 property.  Hosp. Corp. of Am. v. Commissioner, supra at 55-56.

The test under the investment tax credit is described in section 1.48-1, Income Tax Regs.  The regulations state in part that "The term 'structural components' includes * * * all

components (whether in, on, or adjacent to the building) of a central air conditioning or heating system". Sec. 1.48-1(e)(2), Income Tax Regs. Respondent determined that the HVAC units petitioners installed at the Harrell Street and Hickory Street properties were central heating and air conditioning systems and thus were structural components of a building. Petitioners failed to provide any evidence that the HVAC units were window units or otherwise movable rather than part of a central system. Consequently, we sustain respondent's determination.

Depreciation of Improvements

Respondent disallowed depreciation deductions of $73 for both 2002 and 2003 with respect to improvements on the Pearcy Street properties; namely, roof replacements, carpet installation, and painting. Respondent determined that the improvements should be depreciated over a period of 27.5 years (the period applicable to the underlying properties), whereas petitioners contend that they are entitled to amounts greater than those resulting from the use of the period determined by respondent. As with the HVAC units, the issue presented is whether these improvements are structural components that must be depreciated over the same period as the underlying property or are instead tangible personal property.

The roofs' status is clear. See sec. 1.48-1(e)(1), Income Tax Regs. ("The term 'building' generally means any structure or

edifice * * * usually covered by a roof"). Consequently, the expenditures for roof replacements must be capitalized and depreciated using the same 27.5-year period and method as the underlying residential rental property, commencing when the replacements were placed in service. Even if it were conceded that the repainting was a repair expense and the carpet was tangible personal property, petitioners have provided no breakdown of the respective costs for roof replacements, carpet replacements, and repainting. Accordingly, we sustain respondent's determination.

Loss From Offshore Trust

Petitioners claimed a $34,000 ordinary loss on their 2003 return, which respondent disallowed. Petitioner testified that the loss was for moneys paid over to Global Prosperity Group and Innovative Financial Consultants. As reflected in our findings of fact, petitioners made two payments to the foregoing entities totaling $37,234 in 1998 in connection with establishing an offshore trust. Petitioners claimed a $34,000 loss for 2003, representing the amount they claim had not been returned to them when they learned from respondent that promoters of Innovative Financial Consultants had been indicted.

Petitioners have the burden of establishing their entitlement to a deduction. See Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; New Colonial Ice Co. v. Helvering,

292 U.S. at 440. The record is devoid of evidence that would support petitioners' claimed $34,000 loss. While it has been stipulated that petitioners paid out $37,234 in 1998 in connection with their establishment of an offshore trust, petitioner's testimony concerning how that amount became a $34,000 loss in 2003 was conclusory and uninformative, notwithstanding the Court's repeated questioning. Whether considered as a loss from a transaction entered into for profit, see sec. 165(c)(2), or a theft loss, see sec. 165(e), petitioners' claim suffers the fatal defect of a failure to prove their adjusted basis as of 2003, see sec. 165(b); Oates v. Commissioner, 316 F.2d 56, 58-59 (8th Cir. 1963), affg. T.C. Memo. 1962-77. There is no evidence of petitioners' dealings with the trust between 1998 and 2003 that might affect basis or explain the calculation of the claimed $34,000 loss. Moreover, insofar as a theft loss might be concerned, the evidentiary vacuum for the years after 1998 casts substantial doubt upon whether the purported theft was discovered, and any reasonable prospect of recovery ceased to exist, in some year before 2003. See sec. 165(e); Marine v. Commissioner, 92 T.C. 958, 975-976 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); sec. 1.165-1(d)(3), Income Tax Regs. We accordingly sustain respondent's determination disallowing petitioners' $34,000 loss claimed for 2003.

Home Mortgage Interest

After trial petitioners were afforded an opportunity to substantiate certain itemized deductions claimed at trial.[4] Petitioners claimed a $5,049 deduction for home mortgage interest.  Respondent has accepted petitioners' substantiation and conceded all but $626 of the claimed deduction.  Respondent's position is that the disputed $626 is attributable to mortgage interest for a rental property that is not properly deductible on Schedule A, Itemized Deductions.

Petitioners submitted a copy of a Form 1098, Mortgage Interest Statement, issued by Bank of the South, showing two separate mortgage interest payments of $2,800 and $2,249 (for a total of $5,049) for 2003 relating to 108 Sunward Drive, La Vergne, Tennessee, which has been stipulated as petitioners' residence when they filed the petition.  We are satisfied that petitioners have substantiated $5,049 of home mortgage interest deductible pursuant to section 163(h)(3).[5]

---

[4]See supra note 1.

[5]Respondent based his decision to reject $626 of petitioners' claimed home mortgage interest deduction on a bank document petitioners submitted showing $626 as attributable to interest and loan charges for the Harrell Street property. Respondent apparently believes this amount constitutes part of petitioners' claimed $5,049 in home mortgage interest.  However, the Form 1098 petitioners submitted reports both the $5,049 in home mortgage interest paid with respect to petitioners' residence and $2,886 of interest paid with respect to the Harrell Street property.  That amount, added to the $373 of interest

(continued...)

Loan Charges

Petitioners have also claimed entitlement to a 2003 deduction for loan charges of $253 paid with respect to the Harrell Street property.  However, loan charges may not be deducted and must instead be capitalized and amortized over the life of the loan.  Deputy v. du Pont, 308 U.S. 488, 497-498 (1940); Goodwin v. Commissioner, 75 T.C. 424, 440-442 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982).  As petitioners have provided no evidence regarding the life of the underlying loan, they have not substantiated any deduction for loan charges in 2003.

Charitable Contributions

Petitioners' posttrial claims also include $10,550 of itemized charitable contribution deductions.  Respondent rejected $948 of this amount, $142 as attributable to payment to an individual and $806 for lack of substantiation.

The $142 deduction is attributable to a check payable to the order of "Jon Crump" with a memo line bearing the notation

---

⁵(...continued)
shown as paid on the bank document ($253 of the $626 shown on the bank document was attributable to loan charges rather than interest), produces total interest paid of $3,259 for the Harrell Street property.  This latter amount is the amount shown on petitioners' Schedule E, Supplemental Income and Loss (from rental real estate, royalties, partnerships, S corporations, estates, trusts, REMICs, etc.), as mortgage interest paid for the Harrell Street property.  We conclude that the $626 in interest not conceded by respondent has been accounted for on petitioners' Schedule E.

"Children in Ukraine". In order to be deductible under section 170(a), a contribution must be "to or for the use of" certain governmental entities or a "corporation, trust, or community chest, fund, or foundation". Sec. 170(c). Petitioners have provided no evidence that Jon Crump was associated with any charitable organization as an officer, director, or employee. Therefore, petitioners have not shown entitlement to their claimed charitable contribution deduction for $142 that respondent has not accepted.

Petitioners also claimed, and respondent rejected, charitable contribution deductions for cash contributions totaling $806 that petitioners describe in their posttrial submission as made to "Church in Ukraine". Petitioners are required to maintain appropriate records for all charitable contributions. See sec. 1.170A-13(a)(1), Income Tax Regs. Petitioners have not provided any reliable records nor any receipts from a donee organization that would substantiate their claimed cash contributions. See sec. 1.170A-13(a)(2)(i), Income Tax Regs.[6] Therefore, petitioners have not substantiated their

---

[6]Petitioners contend that they are required to maintain records only for contributions over $250 and thus are not required to maintain records for each of the small cash contributions they contend were made to "Church in Ukraine". Although sec. 170(f)(8) requires a contemporaneous written acknowledgment for donations over $250, this requirement is in addition to the requirement that all charitable contributions satisfy recordkeeping requirements established by the Secretary.

(continued...)

claimed charitable contribution deduction of $806 for purported cash contributions to "Church in Ukraine".

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>

---

[6](...continued)
See sec. 170(a)(1); sec. 1.170A-13, Income Tax Regs.  While in certain limited circumstances we have allowed a deduction for small cash contributions to churches where there was credible testimony corroborating the claimed deduction, see, e.g., <u>Wasik v. Commissioner</u>, T.C. Memo. 2007-148; <u>Fontanilla v. Commissioner</u>, T.C. Memo. 1999-156, petitioners raised this claim only after trial, and there is no sworn testimony or other competent evidence to support it.