## MARTIN MAYRATH AND ROSE MAYRATH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 93674. Filed January 28, 1964.

*Adam Y. Bennion* and *J. Edwin Fleming*, for the petitioners.
*Thomas J. Moroney, Jr.*, for the respondent.

OPINION

Whether petitioners are entitled to deduct a portion of the cost of their personal residence as a research and experimental expenditure under section 174 of the 1954 Code [2] is the primary issue for decision.

In preparing their 1956 individual income tax return, petitioners estimated a total expenditure of $286,000 in the construction of their uncompleted residence which was to contain 5,826 square feet. Assuming that a luxury residence would cost $20 per square foot, petitioners multiplied the total square feet by $20 and arrived at a cost of $116,520 for a luxury residence "without experimental features." Deducting this sum from the estimated cost of $286,000, petitioners labeled the difference of $169,480 as the portion of the total cost attributable to research and experimental expenditures. On their 1956 income tax return petitioners reported expenditures for such year of $124,663.35. Of this amount they deducted 59.3 percent ($73,925.-37) as experimental expenditures, such percentage being the ratio of the total amount allocable to research and experimental expenditures

---

[2] SEC. 174. RESEARCH AND EXPERIMENTAL EXPENDITURES.

(a) TREATMENT AS EXPENSES.—

(1) IN GENERAL.—A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction.

\* \* \* \* \* \* \*

(c) LAND AND OTHER PROPERTY.—This section shall not apply to any expenditure for the acquisition or improvement of land, or for the acquisition or improvement of property to be used in connection with the research or experimentation and of a character which is subject to the allowance under section 167 (relating to allowance for depreciation, etc.) or section 611 (relating to allowance for depletion) ; but for purposes of this section allowances under section 167, and allowances under section 611, shall be considered as expenditures.

($169,480) to the total estimated cost ($286,000). To this $73,925.37 amount petitioners have added $4,000 which they have designated "contractor's accounting expense paid to record costs of special construction."

The construction of the residence having been completed by the end of 1957, petitioners contend that they were then able to establish the exact cost of such construction as $287,474.11. Following the same procedure used in 1956, petitioners deducted $116,520, the cost of constructing a residence of 5,826 square feet at a cost of $20 per square foot, from the total construction cost of $287,474.11. The balance of $170,954.11 allegedly represented the total cost allocable to research and experimental expenditures. Taking 59.5 percent of the $162,810.76 construction expenditure for 1957, such percent being the ratio of the total amount allegedly incurred for research and experimental expenses ($170,954.11) to the total cost of construction ($287,-474.11), petitioners arrived at a deduction for 1957 of $96,872.40. Petitioners thus deducted for the years 1956 and 1957 a total of $174,797.77 as a research and experimental expense attributable to the construction of their personal residence.[3]

In his statutory notice of deficiency, respondent disallowed the deduction for each year "because it does not constitute a research and experimental expense within the meaning of the Internal Revenue Code." We agree with the respondent.

The specific provision for the deduction of research and experimental expenses was first enacted in the Internal Revenue Code of 1954 as section 174. Under this section taxpayers may elect to deduct research and experimental expenditures which are paid or incurred during the taxable year in connection with a trade or business. The statute specifically eliminates from treatment thereunder all expenditures for the acquisition or improvement of land and depreciable or depletable property which is "to be used in connection with the research or experimentation." The regulations promulgated under section 174 provide that where research by a taxpayer creates, as an end product, "depreciable property to be used in the taxpayer's trade or business," the taxpayer is permitted to deduct only that portion of the expenditures connected with the development of the depreciable property which may be attributed to research; and research expenditures do not include "the costs of the component materials of the depreciable property, the costs of labor or other elements involved in

---

[3] During the course of the trial, petitioners conceded additional amounts of $7,500 and $35,000 for 1956 and 1957, respectively, as being nondeductible as research and experimental expenditures. Such concessions are purported to eliminate from the claimed research and experimental deductions the cost of such items as carpeting, draperies, landscaping, swimming pool, and tennis courts.

its construction and installation, or costs attributable to the acquisition or improvement of the property." Sec. 1.174-2(b) (2) and (4), Income Tax Regs.

It is clear that the intent of Congress in enacting section 174 was to give taxpayers the option of treating research and experimentation expenditures in much the same manner as ordinary and necessary business expenses deductible under section 162 of the 1954 Code and to encourage taxpayers to carry on research and experimentation. See S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong. 2d Sess., p. 33 (1954). However, to apply the benefits of section 174 to the situation at hand where petitioner seeks to deduct a portion of the cost of an "experimental" house which he and his family personally occupied, even though he professes to be in the trade or business of inventing, would, in our opinion, plainly violate the spirit and intent of the statute and produce an absurd result.

First, we find, as the statute requires, that petitioner has failed to connect the construction of his residence with a trade or business. To a degree he is unquestionably an inventor, as evidenced by the various patents which he has obtained and for which he has applied. With very few exceptions, however, these patents are directly or indirectly related to farming implements of one kind or another; and it is from these particular patents that petitioner has realized income either directly or through his corporations. Whether or not petitioner's work in connection with the invention and development of farming implements places him in the trade or business of inventing, we are completely unwilling to consider as a part of such trade or business his activities in building an "experimental" house for his own family's occupancy and in building factories, warehouses, and offices for the use of his wholly-owned corporations.

Moreover, petitioner's actions during the construction of the house and following its completion do not bear out any intention to use the house or any of its features in the furtherance of a trade or business. Although we assume that in building a house containing no wood the petitioner mastered some of the construction problems involved, he has not shown that he intends to use such knowledge in the business of constructing residential homes or how he would do so if that were his intention. The only effort he made in that direction was to send letters describing the house and some of its features to several metal manufacturers some 3 years after the house was completed and at about the same time petitioners' income tax returns for the years before us were being audited by the Internal Revenue Service.

In *John F. Koons*, 35 T.C. 1092 (1961), we stated that the statutory phrase "trade or business" presupposes an existing business with which the taxpayer is directly connected and that expenditures for

research and experimentation that are preliminary to the establishment of a business do not qualify as deductions under section 174. We think the statute was intended to be used in the realistic and practical sense of a *going* trade or business—a condition which does not exist here. Certainly the petitioner is not in the trade or business of constructing residences, and his attempt to relate such construction activities to other alleged trades or businesses is totally insufficient.

It is our further view that petitioners' expenditures in connection with their "experimental" house are not of a research and experimental nature within the intendment of the statute. In the absence of statutory definition, the regulations under section 174 define "research and experimental expenditures" to mean expenditures "which represent research and development costs in the experimental or laboratory sense." [4] We find the regulatory definition to be reasonable and consistent with the intent of the statute to limit deductions to those expenditures of an investigative nature expended in developing the *concept* of a model or product. We doubt that such was the nature of petitioners' expenditures for the actual *construction* of their "model" residence. And although petitioners have included in their 1956 deduction for research and experimental expense $4,000 for "contractor's accounting expense paid to record costs of special construction," which would seem to enable them to identify specific items of costs due to experimentation, they have resorted to a method of arriving at experimental costs by presuming without convincing proof that a similar house without experimental features would cost $20 per square foot and that the cost in excess of that amount is due to experimentation. This method of calculating research costs lacks the identification of specific expenditures and fails to assure that costs of materials, labor, and other component elements of construction are not also included therein.

Finally, the experimental nature of the house itself is open to question. It may be true that, in petitioner's mind, some of the ideas were new, unique, or involved special problems. But the record as a whole reveals that many of the so-called "experimental" features were either catalog or luxury items and that the special problems encountered were often the result of unusual combinations of materials, modifica-

---

[4] Sec. 1.174–2 Definition of research and experimental expenditures.

(a) *In general.* (1) The term "research or experimental expenditures", as used in section 174, means expenditures incurred in connection with the taxpayer's trade or business which represent research and development costs in the experimental or laboratory sense. The term includes generally all such costs incident to the development of an experimental or pilot model, a plant process, a product, a formula, an invention, or similar property, and the improvement of already existing property of the type mentioned. The term does not include expenditures such as those for the ordinary testing or inspection of materials or products for quality control or those for efficiency surveys, management studies, consumer surveys, advertising, or promotions. * * *

tions of standard construction principles, or the utilization in residential construction of certain features commonly used in commercial construction.

Even if we were to assume that it is petitioner's business merely to "invent," there is a point beyond which his propensity to experiment must be viewed as taking on the characteristics of a hobby. At any rate, in the light of all these evidentiary facts and circumstances, we are not convinced that the cost of constructing petitioners' residence, unusual as it may be, is other than a personal living expense prohibited from deduction by section 262 of the 1954 Code.[5]

In addition to the claimed research and experimental expenses relating to the construction of the residence, there remain in dispute portions of three items of expense classified on petitioners' income tax returns as research and experimental, business service, and engineering and other technical services. Petitioner's testimony as to these items is vague and unsatisfactory. While he testified as to some of the items from checks and invoices, none of which are in evidence, we have only his general statement that the alleged expenditures were in fact paid.

He was unable to connect the alleged expenditures to a particular trade or business or to a specific project. Although petitioner claims to have attempted to allocate and to separate the expenditures for the construction of his house, which were claimed elsewhere, from expenditures for other projects, he admits that there is some commingling and overlapping. Indeed, most of the items of material included in the category of "research and experimental" are suitable for use in a residence or for other personal use.

The claimed expenditures in the year 1955 for engineering and technical services in the amount of $3,350 and for business services in the amount of $400 arise from purported payments to Truitt Bishop from whom petitioner purchased his Cinderella Lane residence and who drew the plans for the Lennox Lane residence. Even though petitioner testified that portions of the amounts were for payment on the residence bought from Bishop, for a large telephone bill, and for architect fees, he attempts to justify deducting as a business expense the full amounts paid to Bishop on the theory that certain other unrelated expenses such as legal and accounting fees could have been deducted but were not. Suffice it to say, this type of "allocation" is wholly inadequate from our standpoint.

Also in dispute are deductions of $1,072.92, $3,072.46, and $3,365.40, taken by petitioners during the respective calendar years 1955, 1956,

[5] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.
Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

and 1957 for the use of their residences for business purposes. During 1955, 1956, and the first 7 months of 1957, petitioners lived in the Cinderella Lane house in Dallas. They owned the California house during 1955, 1956, and the first month of 1957 at which time it was sold. They lived in the Lennox Lane residence for 5 months of 1957. Petitioner alleges to have made a room-by-room analysis of the contribution of each house to business use and arrived at percentages of one-third for the California house for 1955 and 1956, one-half for the Cinderella house for 1955 and 1956, and one-third for the Cinderella and Lennox Lane houses for 1956 and 1957. Purporting to be conservative, he then deducted for these years three-fourths of the above percentages of the "cost" of each residence. There is nothing to show what "cost" is, i.e., whether cost of expenditures for utilities and upkeep or cost of improvements or both. And while attempting to describe the formula employed at arriving at the amounts deducted, petitioner has failed to substantiate total expenditures in any manner and has made no attempt to state the actual business uses to which the residences were employed. Furthermore, considering the sizes of the houses and the size of petitioner's family, it appears unlikely that he could have devoted such large portions of his residences to business use.

Included in such deductions for the years 1956 and 1957 were the sums of $700 and $2,100, respectively, applicable to depreciation on the shop office located at the Lennox Lane address. We have set forth in our Findings of Fact a detailed description of the building. While the petitioner testified that the office was constructed at a cost of $42,000, there is no supporting documentary evidence showing the cost of materials, labor, et cetera. It has not been established whether the alleged cost was also included in the total cost of the Lennox Lane residence, and petitioner's only testimony regarding the useful life of the office building is, "We will probably tear it up in 20 years." It is inconceivable, however, that this 1-story 20 by 40 feet structure built on a concrete slab, and located in a residential rather than a business area, would have cost $42,000. With the scanty evidence adduced we are unwilling to accept petitioner's statements alone and we have been given no other basis upon which to determine an allowance for depreciation. Accordingly, we find that petitioner has not substantiated his claim to deductions for the business use of his residence and depreciation on the shop building.

As to the other items in question, respondent has allowed deductions in each category which are substantial and, in our opinion, reasonable and adequate to cover petitioner's business expenses. Out of total business expenses of $76,615.17 claimed on their income tax returns for these years the respondent allowed $44,926.74. Therefore, we con-

clude that petitioner has failed to meet his burden as to the additional amounts he claims and has failed to show that such expenses were other than personal. See *Rushing* v. *Commissioner*, 214 F. 2d 383 (C.A. 5, 1954), affirming a Memorandum Opinion of this Court.

In order to reflect the agreements of the parties as to other items,

*Decision will be entered under Rule 50.*