EUGENE J. MAGEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Magee v. Commissioner
Docket No. 7606-70.
United States Tax Court
T.C. Memo 1973-271; 1973 Tax Ct. Memo LEXIS 16; 32 T.C.M. (CCH) 1277; T.C.M. (RIA) 73271; December 10, 1973, Filed. Thomas B. Allington, for the petitioner. Robert G. Martinell, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: [1] Respondent determined a deficiency of $1,152.45 in petitioner's Federal income tax for the year 1968. 2 The only issue for our decision is whether expenditures made by the petitioner in 1968 for the development of a portable scaffold invention are deductible as research and experimental expenditures paid in *17 connection with his trade or business under section 174, Internal Revenue Code of 1954. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits thereto are incorporated herein by this reference. Eugene J. Magee (herein called petitioner) was a legal resident of Indianapolis, Indiana, when he filed his petition in this proceeding. He filed his individual Federal income tax return for the year 1968 with the Internal Revenue Service Center, Cincinnati, Ohio. Since 1960, the petitioner has been a full-time employee of Indiana University at Indianapolis, assigned to the maintenance department. His duties included the painting of buildings and working with other employees in painting buildings.
Petitioner's gross wages from Indiana University for the years 1966 to 1970, inclusive, were as follows: 1966
$ 6,667.70
1967
7,228.72
1968
7,694.00
1969
8,142.12
1970
9,291.32 3 Petitioner received, in connection with part-time self-employment as a painter, the following amounts from Larry Blake during the indicated years: 1966
$ 35
1967
215
1969
96
*18 For the year 1970 the petitioner reported on a Schedule C ("Profit (or Loss) From Business or Profession") attached to his form 1040, gross receipts from "painting" of $305.60 and net profit of $297.26. Petitioner is an inventor of a portable scaffold designed for use in painting and other work on buildings, signs, or other structures. The scaffold is adjustable for width, height, and length, and it may be readily assembled and dismantled. On November 30, 1966, the petitioner filed with the Commissioner of Patents a petition praying for a grant of Letters Patent covering the portable scaffold.The Letters Patent were granted to the petitioner on April 15, 1969. Further changes and improvements to the scaffold invention have been made by the petitioner since the date of his patent application in 1966. Petitioner was not required or expected to provide any of the tools or equipment used in his employment with Indiana University. 4 With the exception of minor hand tools, the petitioner was not authorized to use his own tools or equipment in his employment unless he obtained permission from his employer to use a particular tool or piece of equipment. The minor hand *19 tools furnished by petitioner in connection with his employment included lettering brushes, stencil knives, scissors, T-squares, and other small tools normally used in sign painting. Petitioner used scaffolding in connection with his employment. However, during 1969, all of the scaffolds which he used in his employment with Indiana University were provided by the University. His superiors at the University were aware that he was developing his portable scaffold, and, on one occasion in 1970, they gave him permission to use the scaffold to hang a sign which he painted for the University. Subsequently, he discussed with his employer the use of the scaffold in his employment. Experimental models of the portable scaffold were used and tested by the petitioner on painting jobs, outside of his University employment, in 1966, 1967, and 1969. During 1967, the petitioner had certain literature prepared bearing the name "Roller Ladder Scaffold Co." Five hundred copies of this literature were prepared, and about 100 copies had been mailed out by December 31, 1967. 5 During 1968 the petitioner made certain expenditures which were recorded in his business records under the heading *20 "Scaffold Development." These expenditures are summarized below: Materials and Parts
$1,948.78
Small Tools & Supplies
40.33
Labor: Sheet Metal Work, Machine Shop, Welding, Electrical Work
810.75
Wages for part-time help
440.48
Photography & Blue Prints
67.88
Patent Attorneys Fees
371.50
Travel Expense
11.35
Telephone Expense
3.79
Sales Tax Exemption Certificate
7.00
House Trailer: Purchase of House Trailer
500.00
Remodeling and fixing up house trailer - labor and materials
145.71
Gas & Heat Expense
5.06
Trailer Hitch & Accessories
386.57
Total
$4,739.20
During 1968 the house trailer referred to in the above listing was purchased by the petitioner and remodeled so that it would be suitable for activities relating to the design and improvement of the scaffold invention and for storage of related materials. The trailer hitch and accessories were acquired during the same year for use with a utility trailer that was used in connection with the development of the scaffold as well as in connection with an apartment dwelling owned by the petitioner. 6 With the exception of the total amount listed for the purchase of the trailer hitch and *21 accessories, all of the amounts listed in the summary above were expended by the petitioner in 1968 in connection with the development of his scaffold. Of the $386.57 paid for the trailer hitch and accessories, only $275 related to the development of the scaffold. In his Federal income tax return for taxable year 1968, [2] the petitioner claimed a deduction of $4,739.82 with the following explanation: Patents issued for scaffolding. This expense is for building models for display. In his statutory notice of deficiency dated September 25, 1970, relating to the petitioner's taxable year 1968, the respondent disallowed the claimed deduction of $4,739.82 on the ground that it had not been substantiated that such amount was paid in connection with the petitioner's trade or business. ULTIMATE FINDING The research and experimental expenditures made by the petitioner in 1968 for the development of his portable scaffold invention were made in connection with his trade or business. *22 7 OPINION Section 174(a) (1) of the 1954 Code states, as a general rule, that "research or experimental expenditures which are paid or incurred by [a taxpayer] during the taxable year in connection with his trade or business," may, at the election of the taxpayer, be treated as expenses not chargeable to capital account and therefore may be deducted in the taxable year. [3]
During the year 1968 the petitioner was employed as a painter by Indiana University. He engaged in some part-time work as a painter in prior and subsequent years. It is clear on this record that during the year 1968 the petitioner's trade *23 or business was that of a painter. Cf. David J. Primuth, 54 T.C. 374 (1970); Guy R. Motto, 54 T.C. 558 (1970); and Kenneth R. Kenfield, 54 T.C. 1197 (1970). The main thrust of respondent's argument is that there was no connection between such trade or business and the development of the petitioner's portable scaffold. He points out that expenditures qualify for deduction under section 174 only if they are for research 8 or experimentation which is "proximately related" to an existing trade or business. John F. Koons, 35 T.C. 1092, 1100-01 (1961). The respondent argues that there is no such relationship on the facts of this case and has disallowed the petitioner's deductions relating to his research and experimentation expenses during the year at issue. We find the respondent's argument unconvincing. In John F. Koons, supra, we held (at pages 1100-1101): It is our view that section 174(a) (1) applies to expenditures for *24 research and experimentation in connection with an existing business to which such research and development is proximately related, such as the development or improvement of its existing products or services or the development of new products and services in connection with such trade or business. It is apparent from the facts of this case that the petitioner's expenditures for research and experimentation related to an invention designed for the "improvement" of the petitioner's "existing * * * services" as a painter and that the invention was a "development" of a new product "in connection with such trade or business." In addition, the petitioner's actions bear out an intention to use the scaffold "in the furtherance of" his "going trade or business." See Martin Mayrath, 41 T.C. 582, 589-590 (1964), affirmed 357 F.2d 209 (C.A. 5, 1966). 9 Respondent argues that, in order for there to be the requisite connection to a trade or business required by section 174, it is essential that (1) economic return be expected as an end product of the research and experimentation, and (2) economic return be produced through the trade or business to which the *25 experimentation is connected (in this case through the petitioner's employment by the University of Indiana and Larry Blake). Respondent contends that there was no indication of any profit motive, and he asserts that the petitioner was motivated by personal factors. Further, the respondent argues that the scaffold development was not undertaken to produce income from the carrying on of the petitioner's trade or business at the University or at his part-time job with Larry Blake. We think there is sufficient evidence herein to establish the petitioner's profit motivation. First, we note that the lack of economic return to the petitioner does not alone rule out the intention and expectation of making a profit. [4] Such experimental activity often shows little, if any, return during developmental stages. It was to encourage this kind of activity that Congress authorized the current deduction of research and experimental expenditures. S. Rept. No. 1622, 83d Cong., 2d Sess., p. 33. Significantly, the petitioner 10 obtained a patent on his scaffold. "If pleasure were the only incentive *26 and recompense sought by the petitioner in developing his mechanical ideas, there was no necessity to go to the trouble and expense of procuring patents." Harold T. Avery, 47 B.T.A. 538, 541-542 (1942). See also Lamont v. Commissioner, 339 F.2d 377, 380 (C.A. 2, 1964), and Hirsch v. Commissioner, 315 F.2d 731, 736 (C.A. 9, 1963). The procuring of a patent, granting exclusive rights of manufacture and marketing, is strongly indicative of an expectation of economic return. Moreover, in 1967 the petitioner prepared and distributed literature which described the invention, and he sought information as to the market potential of the scaffold. There is nothing in the record to indicate that this desire of the petitioner to exploit the scaffold for financial gain did not remain with him during the year 1968. In fact, all indications are to the contrary. We reject respondent's assertion that the scaffold development must relate to the petitioner's job with the University or to his job with Larry Blake in order for his expenditures to be regarded as having been made "in connection *27 with his trade or business" under section 174. In Best Universal Lock Co., 45 T.C. 1 (1965), this Court stated (at page 10): 11 We find nothing in the legislative history of section 174 to support respondent's contention that the section was not meant to cover research and development expenses where a corporation was seeking to develop a new product unrelated to its past line of products. An express purpose of the new section in the 1954 Internal Revenue Code was to encourage taxpayers to carry on research and experimentation, S. Rept. No. 1622, 83d Cong., 2d sess., p. 33, and we think respondent's limited approach would prove inimical to such congressional purpose. The Commissioner has acquiesced in this decision. See 1966-2 C.B. 4. Furthermore, in Revenue Ruling 71-162, 1971-1 C.B. 97, the Service ruled that - research and experimental expenditures for new products or processes, that are not related to the current product lines or manufacturing processes of the taxpayer's trade or business, are, nevertheless, research and experimental *28 expenditures within the meaning of section 174 of the Code and the regulations thereunder. This Court's view, as stated in Best Universal Lock Co., supra, is that it is not necessary that research and experimental activity relate solely to a taxpayer's existing products or services. Here we think the requisite statutory relationship between the petitioner's invention and his trade or business has been shown by the close relationship between the portable scaffold and the services rendered by him as a painter. The potential uses of the device in connection with carrying on the petitioner's existing trade or business are plainly manifest. The allowance of a deduction for the expenditures 12 of the petitioner is, in our view, consistent with the congressional desire to provide an incentive for inventive creativity. It is obvious that the petitioner, within the context of his existing trade or business, did not engage in inventing activities and did not have any capacity for manufacturing or marketing the scaffold. However, the pertinent legislative history contains no suggestion *29 that these factors are essential for a deduction. In addition to S. Rept. No. 1622, supra, see H. Rept. No. 1337, 83d Cong., 2d Sess., pp. A57-A59. The only requirement is for a "connection" with the taxpayer's trade or business. While it is true that some cases have sought to connect the expenditures to a trade or business of an inventor, [5] other cases have looked to the taxpayer's customary trade or business, even though it might be outside the scope of inventing, to find the requisite connection. [6] Thus the decided cases appear to regard a connection with any trade or business (and not just one which relates to inventing activities) as fulfilling the statutory requirement. [7]
*30 13 Accordingly, we hold that the petitioner's expenditures for research and development were "paid or incurred by him during the taxable year in connection with his trade or business" and are therefore deductible under section 174 of the Code. Two additional points require comment. In 1968, the petitioner purchased a trailer hitch and accessories for a total cost of $386.57. These items were acquired for use with a utility trailer that the petitioner acquired for hauling the scaffold to locations for use and testing and for hauling trash from an apartment building which he owned. Respondent argues that none of the $386.57 was expended for the development of the scaffold. We have concluded that the utility trailer was used predominantly in connection with activities related to scaffold development. Using our best judgment on the record before us, we hold that $275 of this expenditure falls within the purview of section 174 and is deductible thereunder. Cf. Cohan v. Commissioner, 39 F.2d 540 (C.A. 2, 1930). Respondent also disputes the deductibility of $500 expended by the petitioner in 1968 to purchase a house trailer. The house trailer was remodeled *31 by the petitioner so that it would be suitable for activities relating to the design and improvement of the scaffold invention and for storage of related materials. We have concluded 14 that the house trailer was used solely in connection with activities associated with scaffold development. Therefore, the full $500 expenditure falls within the purview of section 174 and is deductible thereunder. To reflect the conclusions reached herein, Decision will be entered under Rule 50. Footnotes
1. Pursuant to a notice of reassignment sent to counsel for the parties, and to which no objections were filed, this case was reassigned from Judge Austin Hoyt to Judge Howard A. Dawson, Jr.↩, for disposition. 2. The petitioner claimed deductions for research and experimental expenditures on his income tax returns for the year 1964 through 1967. These expenditures related to the scaffold invention. ↩
3. SEC. 174. RESEARCH AND EXPERIMENTAL EXPENDITURES. (a) Treatment as Expenses. - (1) In General. - A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction. ↩
4. See Johan A. Louw, T.C. Memo. 1971-326↩. 5. See e.g., Stanton v. Commissioner, 399 F.2d 326 (C.A. 5, 1968), affirming a Memorandum Opinion of this Court; Johan A. Louw, supra; Nicholas A. Dodich, T.C. Memo. 1971-58; Charles H. Schafer, T.C. Memo. 1964-156↩. 6. See e.g., John F. Koons, 35 T.C. 1092 (1961); William S. Scull, II, T.C. Memo. 1964-224. Cf. Martin Mayrath, 41 T.C. 582 (1964), affirmed 357 F.2d 209 (C.A. 5, 1966); Kenneth Reiner, T.C. Memo. 1965-197↩. 7. See Joe H. Cunningham, T.C. Memo. 1968-242↩.