JOSEPH M. KASPAR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Kaspar v. Comm'r
Docket No. 7297-75. United States Tax Court
T.C. Memo 1976-389; 1976 Tax Ct. Memo LEXIS 13; 35 T.C.M. (CCH) 1758; T.C.M. (RIA) 760389; December 21, 1976, Filed *13 From 1964 to 1973 petitioner was totally unsuccessful in promotion of his invention--a process for extracting raw meat from the shell of the body section of a spiny lobster. In 1973 petitioner sold his foreign patent rights, netted the proceeds ($2,010) against his total expenditures for the period 1964 and 1973 relating to such patents ($27,060.34), and deducted the difference as an ordinary business loss. The notice of deficiency recharacterized this loss as a long-term capital loss. Held, petitioner was not in the trade or business of inventing, exploitation/sale of his patents, and/or extracting raw meat from spiny lobsters. Held further, beyond respondent's concessions, petitioner has failed to prove what amount, if any, was expended in 1973; the amount of depreciation allowed or allowable under sec. 1016(a)(2), necessary to determine petitioner's remaining basis in his patents; and the business purpose for his 1973 travel expenditures to Ecuador, alleged to be in connection with his patent activities. Held further, under Cohan v. Commissioner,39 F.2d 540 (2nd Cir. 1930), petitioner's basis in the patents is at best equal to the sale proceeds; no gain or loss is recognized *14 on the 1973 sale. Joseph M. Kaspar, pro se. Wayne G. Chew, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in petitioner's federal income tax for the calendar year 1973 in the amount of $2,217.07. The principal issue for decision is whether petitioner, Joseph M. Kaspar, is entitled, on his 1973 return, to an ordinary loss or capital loss deduction for the sale, at a loss, in 1973 of foreign patent rights to an unrelated party. FINDING OF FACTS Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits thereto, are incorporated herein by this reference. The petitioner resided in Miami, Florida at the time the petition was filed herein. He filed his federal income tax return for the taxable year 1973 with the Internal Revenue Service Center at Chamblee, Georgia. In early 1964 petitioner developed a process for extracting raw meat from the shell of the body section of a spiny lobster. Heretofore the body section was disregarded as waste; seafood processors marketed only the lobster tail. This invention extracted in one piece, such body section "tenderloin" *15 which, on the average, weighed one-half the weight of the meat in the lobster tail. The essence of the tenderloin is identical to the meat of a soft shelled crab. Believing there to be a profit potential in his discovery, [1] petitioner hired several professional patent searchers to determine whether this process was, in fact, his own original discovery. The search produced no evidence that this invention was patented. Therefore, petitioner, through his brother's and his efforts, filed application for the grant of letters patent with the United States Patent Office. United States Patent No. 3,276,070 was assigned for a period of 17 years to petitioner and his brother on October 4, 1966. [2]
After filing the application for the U.S. patent, petitioner hired John C. Malloy to file and prosecute patent applications in *16 those foreign countries producing spiny lobster tails at a rate of 500,000 pounds or more annually. Malloy, through his foreign associates, filed 21 foreign patent applications on this invention of which 18 were granted as follows: COUNTRY
GRANTED
TERM
South Africa
January 11, 1965
16 years
Ecuador
January 7, 1966
12 years
New Zealand
January 7, 1966
16 years
India
January 10, 1966
16 years
Mexico
January 11, 1966
15 years
Portugal
January 10, 1966
15 years
Nicaragua
January 13, 1966
10 years
South West Africa
February 10, 1966
14 years
Haiti
March 22, 1966
20 years
Bahama Islands
March 29, 1966
7 years
Australia
October 4, 1966
17 years
Honduras
April 10, 1967
15 years
Thailand
November 22, 1967
No time limit
Chile
May 6, 1968
15 years
Cuba
July 25, 1968
17 years
Jamaica
October 4, 1968
14 years
Costa Rica
October 15, 1969
No expiration date
Venezuela
August 13, -- (?)
Expiration date
unknown Application to Japan was rejected, and as of 1973, no action on applications had been taken by the governments of Brazil or British Honduras. All rights and title to foreign patents, applications for foreign patents, and the U.S. patent were assigned by petitioner to the Kaspar family trust. The trustees of such trust were petitioner and his brother, *17 Frank Kaspar. Since 1957 petitioner has been employed full time as a diesel plant operator for the Miami-Dade Water and Sewer Authority Plant. As a machinist his job is to take the temperature and pressures of six diesel engines once an hour. Petitioner works on a shift basis, 40 hours per week. He is required to work the day shift (8:00 a.m. to 4:00 p.m.) only five days per month. In 1965 with 21 foreign patent applications filed, petitioner considered resigning his machinist job and devoting full time to his project. However, petitioner reasoned that because his employment was not strenuous and required only five days of day shift per month, he could easily promote his invention and also retain his job with Miami-Dade Water & Sewer. From 1965 through 1967 petitioner spent several hours a day actively seeking the promotion, sale, licensing, and/or the franchising of his invention and of the patent rights thereto. He met with several corporate fish food processors and food import brokers and incurred substantial expenses in setting up demonstration and production lines. In each instance, upon initially contacting such processors and brokers, their reactions were very favorable. *18 However, in every case their optimism for the successful marketing of petitioner's process dissipated to the extent that they all eventually expressed no further interest in petitioner's invention. After 1967 petitioner reduced his promotional activities to mail contacts with large restaurant chains. He contacted Hot Shoppes, Inc., Holiday Inns, and Howard Johnson Co. He offered the restaurants free frozen tenderloin samples for a public acceptance test. In each instance the final result was the same--they had no interest in petitioner's spiny lobster tenderloins. Also, during this period, petitioner advertised his invention in several trade journals. Petitioner decided early in 1973 that because of his bad health, he could no longer attempt to promote his invention. He was aware that on March 27, 1973, "Patexpo '73," an international licensing show was to be held in New York City. Reasoning that the U.S. patent was seven years old, and that despite his diligent efforts, he had realized no receipts from his invention, petitioner believed he had to prove to prospective purchasers of the patent at Patexpo '73 that lobster tenderloins were being produced illegally. Petitioner thought *19 the best place to gather this infringement information was the Galapagos Islands in Ecuador. Petitioner purchased a two-week commercial boat tour to the islands posing as a "camera-happy tourist." He hoped to get color slides of an actual infringement of the patent. On his first day aboard the commercial boat tour in Ecuador, petitioner realized that he would not be able to gather any evidence of infringement because of Ecuadorian restrictions. However, petitioner continued on the tour. The boat tour fee, payable in advance, was nonrefundable upon sailing. At Patexpo '73 petitioner leased a booth exhibiting the patents and offering them for sale to the best offerer. The exhibit produced a buyer, unrelated to petitioner, who agreed to purchase all the foreign patents for $2,000 and the two pending foreign patent applications for $10,00. All assignments of rights of the letters patents and patent applications recited the Kaspar family trust, Joseph M. Kaspar and Frank J. Kaspar, trustees thereof, as the sole owner. The sale closed on August 6, 1973. Although advertised and exhibited, no offer was received for the U.S. patent. The total amount expended by the petitioner in connection *20 with his aforesaid patent activities for the period 1965 through 1973 was as follows: U.S. Patents
$ 6,000.00
Foreign Patents and
Applications
27,060.34
TOTAL
$33,060.34
Petitioner on Schedule C of his federal income tax return for the year 1973 netted the receipts from the sale of the foreign patents and the pending foreign patent applications rights ($2,010) against the total expenditures relating to such foreign patents and applications ($27,060.34) to produce a net ordinary loss of $25,050.34. [3] Petitioner described the $27,060.34 of expenses as follows: DESCRIPTION
AMOUNT
YEAR PAID
Production expenses
$ 907.48
1966
1,501.28
1967
Travel to Ecuador
1,551.00
1973
Patexpo '73
954.54
1973
Automobile mileage
5,681.00
1964 to 1970 [4]
835.00
1971 to 1973
Incidentals relating to
production lines
3,599.20
--- [5] *21 Attorneys fees
11,930.84
-- [6]
Stationery
100.00
--- [7]
TOTAL
$27,060.34
The process for extracting raw meat from a spiny lobster is the sole invention for which petitioner has applied for a patent. Petitioner has not been and is not now in the trade or business of extracting raw meat from lobsters. In his notice of deficiency dated May 9, 1975, respondent determined that the loss on the sale in 1973 of petitioner's foreign patents was not an ordinary loss but a long-term capital loss. Respondent's explanation of the adjustment was as follows: It is determined that you are not entitled to an ordinary loss deduction as the sale of your patent was not related to your trade or business. * * * such loss is a long-term loss from the sale of capital assets. OPINION Respondent concedes on brief that petitioner paid or incurred in 1973 the following expenses and that they are properly *22 deductible: [8] (1) $800 in legal fees, (2) $360 in incidental expenses, (3) $200 in travel expenses (mileage), (4) $954 in selling expenses at Patexpo '73, and (5) $15 in miscellaneous expenses. However, respondent argues that the amount of $23,180.34 is not properly deductible since such amount was not paid or inccurred in 1973, the year in issue. See section 461(a), I.R.C. 1954. Furthermore, respondent contends that no deduction should be allowed for petitioner's travel expenses to Ecuador, expended in 1973, in the amount of $1,551 pursuant to sections 274 and 262. Petitioner on brief concedes that the aforenoted $23,180.34 was not paid or incurred during the taxable year 1973. He contends that he entered a legitimate business undertaking in 1964 when he, with his brother's help, discovered and developed a process of extracting raw meat from the shell of the body section of a spiny lobster. Petitioner argues that he consulted the Internal Revenue Service in January 1967 seeking advice on the appropriate method to terminate this venture and deduct his losses. The alleged Internal Revenue Service *23 personnel consulted informed petitioner that he must either sell the patents or wait until their expiration to deduct properly his losses. Moreover, petitioner states on brief that his only fault in this matter was that, "* * * being a conservative person, I did not quit my job as a diesel plant operator * * * in 1964, when I decided to go into business. If I had quit my job and had borrowed the necessary investment capital, I could have legally deducted all of my experimental and developmental expenses in the year in which the money was spent, and at the same l time, I could have drawn a handsome salary." What constitutes a trade or business is a question of fact to be determined from all the facts and circumstances in each case. Higgins v. Commissioner,312 U.S. 212 (1941). Although petitioner is pro se before this Court, he has failed to prove that he is or was in the trade or business of inventing or exploiting his patent. See Jack P. Stanton v. Commissioner,399 F.2d 326 (5th Cir. 1968) affg. a Memorandum Opinion of this Court; Martin Mayrath,41 T.C. 582 (1964) affd. 357 F.2d 209 (5th Cir. 1966). We do not doubt petitioner's credibility; however petitioner is mistaken in *24 his understanding of the tax law applicable to this case. Under the aforenoted Fifth Circuit decisions, the record is simply insufficient to convince us that petitioner engaged in the inventing business or the business of exploitation/sale of his patents. [9] There simply was no existing business within the meaning of the foregoing cases, with respect to which the petitioner could incur expenses. Our finding that petitioner's activities did not constitute a trade or business precludes the applicability of sections 174 and 162.Petitioner"must be able to point to some particular *25 statute to justify his deduction and establish that he comes within its items." E. JanRoberts,62 T.C. 834, 836 (1974), citing Deputy v. DuPont,308 U.S. 488, 493 (1940); White v. United States,305 U.S. 281 (1938). Therefore, petitioner is relegated to section 212. As previously stated, respondent has conceded $2,329 of expenses as properly deductible in 1973. Such deduction must necessarily have its statutory authority under section 212. Of the remaining $24,731.34 of expenses, $1,551 of expenses was paid in 1973. The record is inconclusive to establish the (years) the remaining amount of $23,180.34 was paid. Thus, any of this amount which may be characterized as a section 212 expense will not be allowed as a deduction for the year in issue because petitioner has not proven that he paid such expense in 1973. [10]Section 461 and section 1.461-1(a)(1), Income Tax Regs.
Petitioner's expenditures paid in a particular year and not characterized as section 212 expenses should have been charged to capital and thereby increased his basis in the *26 patents. Section 1.167(a)-6, Income Tax Regs. provides that the basis of a patent is depreciated over its useful life. Upon sale of such patent its basis must be adjusted for the amount of depreciation allowed or allowable. Section 1016(a)(2); Whitelite Electric Co.,18 B.T.A. 934 (1930). Again, the record is insufficient to determine the useful lives of the foreign patents, whether some or all were renewable, and when such capitalized amounts were spent. We are therefore unable to determine the exact amount of depreciation allowable as of the date of sale. However, under the rule established in Cohan v. Commissioner,39 F.2d 540, 543-544 (2nd Cir. 1930), we may make an approximation of this amount, bearing heavily, if we choose, "upon the taxpayer whose inexactitude is of his own making." We therefore determine petitioner's remaining basis in his foreign patents to be, at least, $2,010 and conclude that petitioner recognized no gain or loss on the 1973 sale. Finally, we agree with respondent that petitioner has not met the substantiation requirements of section 274(c), and the income tax regulations thereto, with respect to the $1,551 of travel expenditures to Ecuador paid by *27 petitioner in 1973. Section 1.274-5(b)(1), Income Tax Regs. prescribes the following substantiation requirements: (1) amount, (2) time, (3) place, and (4) business purpose. Petitioner has established items 1 through 3, but has failed to establish adequately the business purpose for such trip. The law is well settled that petitioner must produce corroborative evidence to support his self-serving testimony that his business purpose in taking the trip was to determine if there were any infringements on his patent. John L. Ashby,50 T.C. 409 (1968); Walter L. Woodward,50 T.C. 982 (1968). Again, petitioner has failed to meet his burden of proof. Realizing that petitioner is pro se and after a careful review of the record and parties' briefs, it is evident that both petitioner and respondent have inadequately presented the issues in this case. Exemplifying this we note that the 1973 contractual sale/assignments of the foreign patents and patent applications to a party unrelated to petitioner recited the Kaspar family trust as the sole owner and transferor of such foreign patent rights. [11] Neither party addressed himself to this issue, the trust document has not been offered into evidence, *28 and the record does not indicate why the trust should not be treated as the rightful owner of the patent rights. In view of the foregoing, Decision will be entered under Rule 155. Footnotes
1. Imports of spiny lobster tails to the United States in 1956 were approximately 25 million pounds. ↩
2. Patent attorney, John C. Malloy, reworded the claims for the patent and prosecuted the application. Petitioner's brother, Frank Kaspar, did not invest any money in the enterprise and surrendered his ownership interest to petitioner immediately after grant of the patent.↩
3. Petitioner utilizes the cash method of accounting. ↩
4. At trial petitioner was unable to determine the number of miles driven in any specific year. The expense was computed at 10 cents per mile for the period of 1964-1970 and 12 cents per mile thereafter. ↩
5. This included 150,000 trade marked plastic bags to package the tenderloins, special hand tools, tools for forming bulk packaging material, and a machine for cutting individual tenderloins. Petitioner was unable at trial to recall in what (years) such amount was spent. 6. Petitioner testified he paid approximately $600- $800 in 1973. Prior year payments were approximately the same. ↩
7. Petitioner did not keep a record of this expense and the amount shown was an estimate.↩
8. Respondent does not cite specific statutory authority for these allowable amounts.↩
9. Assuming arguendo that petitioner was engaged in a trade or business, he failed to make the necessary elections under 174 to deduct or amortize his research and developmental expenditures. Expenditures which are neither treated as expenses nor deferred and amortized under section 174 must be charged to the capital account. Section 1.174-1, Income Tax Regs. Also, respondent's section 461 theory remains valid for any section 162 expenditures. Thus petitioner must still prove upon sale of the patent rights in 1973, his remaining basis in such assets. See section 1016(a)(2) and our discussion of this issue, infra↩.
10. However, we are able to find that the petitioner paid $907.48 of production expenses in 1966 and $1,501.28 of production expenses in 1967.↩
11. Petitioner's testimony at trial further exemplifies this crucial point: Respondent: Okay. Fine. And then I also noticed on some of the -- your documents, which indicate the sale of the patent, that it was for the Kaspar family trust?
Petitioner: That's right. Respondent: Now, -- Petitioner: I was so certain that it was going to make money, that I divided it up before I made the first buck, and I didn't make the first buck. Respondent: Okay. So actually, the legal ownership of the -- Petitioner: Of the -- yes, it was -- the legal ownership was the Kaspar family trust, that's right. Respondent: As opposed to you yourself, owning the patent? Petitioner: I was -- I was the inventor. Respondent: Okay. Fine. Petitioner: After the patent was granted, then I formed the Kaspar family trust. Respondent: But it was still your money -- all your money? Petitioner: Yes.↩