THOMAS A. JOHNSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 12018-91
United States Tax Court
T.C. Memo 1993-564; 1993 Tax Ct. Memo LEXIS 570; 66 T.C.M. (CCH) 1453; November 29, 1993, Filed *570 Decision will be entered under Rule 155. Thomas A. Johnson, pro se. For respondent: Stephen C. Best. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined that petitioner has an income tax deficiency of $ 49,287.49 for 1987. Respondent also determined that petitioner is liable for additions to tax for fraud under section 6653(b)(1)(A) and (B) and substantial understatement of tax under section 6661 for 1987. Respondent concedes the addition to tax for fraud. After concessions, the issues for decision are: 1. Whether respondent's use of the bank deposits method to determine petitioner's income was correct. We hold that it was. 2. Whether petitioner had unreported taxable income from a business known as Ticketline, or whether the receipts were nontaxable loan repayments. We hold that the receipts were taxable income. 3. Whether petitioner had a larger cost of goods sold than respondent allowed. We hold that he did not. 4. Whether petitioner may deduct $ 9,687 as research and experimental expenses under section 174 for the cost of developing a computer software program to provide nutritional information to grocery shoppers. We hold *571 that he may not. 5. Whether petitioner is liable for self-employment tax. We hold that he is. 6. Whether petitioner is liable for an addition to tax for substantial understatement of tax under section 6661. We hold that he is. Section references are to the Internal Revenue Code as in effect for 1987. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioner
Petitioner lived in Vernon, Connecticut, when he filed the petition. He has a bachelor's degree in mathematics and a master's degree in psychology. He trained to be an actuary and consulted as a stock analyst. In 1987, he invested in the stock market, in a band called the Paisley Jungle, and in a partnership named Ladykiller Development. Since 1981, petitioner has prepared his own income tax returns. 2. Ticketline
Robert Finnimore (Finnimore) was a ticket scalper whom petitioner met in 1985 when petitioner bought concert tickets from him. Finnimore was 21 or 22 years old in 1985. Finnimore used Ticketline as a business name. In 1987, petitioner became active with Finnimore in the Ticketline business. *572 Ticketline bought tickets for concerts and sporting events for resale. On March 13, 1987, petitioner opened a checking account for Ticketline at a bank in Bridgeport, Connecticut. Petitioner represented to the bank that he owned Ticketline. He listed his home address as the business address for Ticketline and had the bank statements sent there. He had sole signature authority for this account. Petitioner agreed to inform the bank if anyone else had an interest in the account, but he never did. Petitioner regularly deposited to and withdrew funds from this account. He deposited $ 104,949 in the account in 1987 which he did not report as income. In 1987, petitioner opened a merchant's charge card account under the business name Ticketline to enable customers ordering tickets to pay with a credit card. He represented to the bank that he owned Ticketline. He listed his home address as the Ticketline business address and had the charge account summaries sent there. Petitioner occasionally bought tickets for resale and took orders for tickets. He controlled funds paid to Ticketline. He gave Finnimore cash to buy tickets, and he deposited ticket sale proceeds. 3. Computerized *573 Nutritional Analysis of Grocery Products
In 1987, petitioner explored prospects for opening a grocery store to be called "The Food Store". He soon abandoned the idea. On the Schedule C for 1987, he indicated that The Food Store's principal business was to be a grocery store. In 1987, petitioner got the idea of developing a computer software program to help grocery shoppers select food based on its nutritional characteristics, including calories, carbohydrates, proteins, and vitamin and mineral content. He developed the software program by 1991, and in 1991 he copyrighted it. Petitioner bought a computer and related supplies for $ 4,195 in August and September 1987. Petitioner bought the computer for a company named "Something Wild". In 1988, he hired a nutritionist. 4. Petitioner's 1987 Income Tax Return and Amended Return
On his 1987 tax return, petitioner reported $ 54,762.92 in capital gains, $ 37,072.85 in Schedule E losses, and $ 18,139.86 in adjusted gross income and $ 449.79 in interest income. He reported no wage or salary. In May 1989, petitioner filed an amended 1987 return. On that return, he reported $ 26,631 in capital gains, $ 450 in interest income, *574 and $ 17,444 in adjusted gross income. He deducted $ 9,687 as research and experimental expenses as follows: Supplies
$ 4,195
Legal & professional fees
2,925
Dues & publications
465
Advertising
537
Travel
314
Meals
23
Utilities
1,228
TOTAL
9,687
5. Respondent's Examination
Respondent's revenue agent reconstructed petitioner's income for 1987 using the bank deposits and cash expenditures method. The revenue agent interviewed petitioner on May 29, 1989. During the interview, the revenue agent asked petitioner how much cash he had on hand at the beginning and end of 1987. Petitioner said about $ 200. The revenue agent asked petitioner if he had any outstanding loans. Petitioner said no. Petitioner had three checking accounts in 1987: One at Todge Trust, a Ticketline account, and a Universal Life Church (ULC) account. Petitioner told the revenue agent about the checking account at Todge Trust, but he did not tell the revenue agent about his Ticketline and ULC checking accounts. The revenue agent discovered those accounts through an administrative summons. The revenue agent concluded and petitioner concedes that he failed to report $ 42,609 in interest *575 income from the ULC account on his 1987 return. The revenue agent concluded that petitioner deposited $ 104,949 in his Ticketline account in 1987. He credited petitioner with a cost of goods sold of $ 43,595 for the Ticketline business. The revenue agent calculated petitioner's cost of goods sold by examining checks written to cash for $ 1,000 or more and certain automated teller machine (ATM) withdrawals. OPINION 1. Respondent's Use of the Bank Deposits Method
a. Background
Where a taxpayer has failed to maintain adequate records of the amount and source of his income, and respondent has determined that the deposits are income, the taxpayer must show that respondent's determination is incorrect. Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In the absence of adequate books and records, respondent may reconstruct a taxpayer's income by any reasonable method which clearly reflects income. Sec. 446; Holland v. United States, 348 U.S. 121, 130-132 (1954). The bank deposits method has long been approved by the courts as a method *576 for computing income. Estate of Mason v. Commissioner, supra at 656. Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, supra at 656-657. b. Connection to Income-Producing Activity and Petitioner's Loan Claim
Petitioner argues that respondent failed to link the deposits to any income-producing activity. We disagree. Respondent linked petitioner's deposits to Ticketline, which was an income-producing activity. Petitioner argues that the deposits are not his gross receipts because he was not in the business of selling tickets. Petitioner claims that two newspaper articles (from 1984 and 1986) which describe Finnimore's ticket scalping activity and a 1988 advertisement giving Finnimore's home number to order tickets show that petitioner did not own Ticketline. We disagree. Petitioner had total financial control of Ticketline in 1987. He represented to the bank that he owned Ticketline. Petitioner occasionally took ticket orders and bought and resold tickets for Ticketline. Petitioner contends *577 that the deposits are nontaxable because they were repayments of loans he made to Finnimore. Petitioner claims that he did not charge interest because he wanted to help Finnimore. He claims that in lieu of interest, he expected only to receive the two best tickets to any concert. The existence of a loan is a question of fact to be decided on the basis of all the facts. Beaver v. Commissioner, 55 T.C. 85, 91 (1970). Some of the relevant factors are: Whether the parties were dealing at arm's length, whether the loan was in writing, whether the loans provided for interest, whether repayments were made, whether there was a business purpose for making the loan, and whether payments are not contingent on profits. See Beaver v. Commissioner, supra; Arlen v. Commissioner, 48 T.C. 640, 648 (1967). Petitioner had no promissory note or repayment schedule for the alleged loans. Petitioner did not report any interest income from the alleged loans. Petitioner had known Finnimore only a year or two when this arrangement began. Finnimore's repayments, if any, were alleged to be contingent on *578 his having profits from the activity. Petitioner was an experienced business person who knew how to structure a loan if that is what he intended. During the audit, when respondent's revenue agent asked petitioner if he had any outstanding loans, petitioner did not mention a loan to Finnimore. At trial, petitioner offered into evidence around 21 pages that he claimed were his loan ledger. The ledger does not mention a loan to, or repayments from, Finnimore. During the audit, petitioner showed the revenue agent only 2 of the 21 pages. About 11 of these pages related to 1987. We conclude that the notebook does not establish that petitioner made loans to or received payments from Finnimore. Petitioner argues that the testimony of his friend, Christine Barton, corroborates his testimony that he lent money to Finnimore. She testified that petitioner was concerned about the loans he made to Finnimore. However, she did not have firsthand knowledge of the relationship between petitioner and Finnimore, and she did not know any details of the alleged loans. Petitioner's reliance on her testimony is not persuasive in light of the factors discussed above to the contrary. Petitioner *579 subpoenaed Robert Finnimore to testify, but he refused to do so on self-incrimination grounds. Petitioner argues that we should infer that Finnimore's refusal to testify shows that Finnimore, not petitioner, owned Ticketline. We disagree in light of the evidence of petitioner's financial control of and other connections to Ticketline. We conclude that the deposits to the Ticketline accounts petitioner controlled were income to him and were not loan repayments from Finnimore. See Dean v. Commissioner, 57 T.C. 32, 45 (1971)(taxpayer did not show there was a loan where he had no written agreements, notes, interest, security arrangements, ceilings on amounts advanced, or fixed repayment date). c. Petitioner's Deposits
In his reply, petitioner admitted that his unreported bank deposits totaled $ 104,949 in 1987. At trial, petitioner pointed out that the revenue agent's worksheet shows that petitioner deposited $ 98,812, not $ 104,949. The revenue agent could not explain the $ 6,137 difference. However, based on petitioner's concession in the reply, we find that petitioner's deposits were $ 104,949. Thus, we hold that petitioner received, but *580 failed to report, gross receipts of $ 104,949 from Ticketline in 1987. d. Cost of Goods Sold
Petitioner argues that respondent incorrectly applied the bank deposits method by not allowing a sufficient amount for cost of goods sold. Petitioner asserts that respondent's sampling technique was inadequate because the revenue agent did not consider all of petitioner's checks, ATM withdrawals, or transfers among the three accounts. Generally, cost of goods sold is the cost of beginning inventory plus purchases during the year less the cost of ending inventory. Fox Chevrolet, Inc. v. Commissioner, 76 T.C. 708, 722 (1981). Gross receipts are reduced by cost of goods sold in determining business gross income. Sec. 1.61-3(a), Income Tax Regs. Respondent determined that petitioner's cost of goods sold for Ticketline for 1987 is $ 43,595. The revenue agent told petitioner which cash transfers, cost of goods sold, and cash items he considered, but petitioner did not submit more checks for the revenue agent to consider. Petitioner submitted additional checks during the trial totaling $ 30,900. Petitioner testified that he used these funds for Ticketline *581 and argues that these checks should be included in cost of goods sold. However, petitioner gave no credible explanation for how he used the funds. We are not convinced that petitioner used all the cash from checks and ATM withdrawals to buy tickets for Ticketline. His testimony is not adequately substantiated with contemporaneous records. Petitioner points out that the revenue agent testified that he would have counted all checks written to cash in figuring cost of goods sold. Petitioner's reliance on that testimony overlooks the fact that petitioner has the burden of proving that these expenses are part of cost of goods sold. Petitioner gives us no credible basis to decide to what extent, if any, these expenditures were business related. We sustain respondent's determination that Ticketline's cost of goods sold is $ 43,595. 2. Petitioner's Deduction for Research and Experimental Expense for 1987
a. Background
Petitioner contends that he may deduct his expenses for developing a computer software program to display a nutritional analysis of grocery products as research and experimental expenses under section 174. The parties agree that the expenses should be *582 capitalized if they are not deductible under section 174. Petitioner concedes that he may not deduct his expenses for preparing to open a grocery store as research and experimental expenses. Petitioner must prove he is entitled to the claimed deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Research or experimental expenses, for purposes of section 174, are research and developmental costs in the experimental or laboratory sense. Mayrath v. Commissioner, 41 T.C. 582, 590 (1964), affd. 357 F.2d 209 (5th Cir. 1966). Respondent acknowledges that the cost of developing computer software may qualify as research and experimental expenses. See sec. 1.174-2(a)(3), (4), Example (2), Proposed Income Tax Regs., 48 Fed. Reg. 2799 (Jan. 21, 1983). Petitioner argues that he began to develop his software program in 1987. However, petitioner's 1987 Schedule C says The Food Store was to be a grocery store, and does not mention the software project. Petitioner did not establish that his research began in 1987. b. Specific Expenses
Petitioner deducted *583 $ 4,195 for a computer and its peripherals. He bought the computer for a company named "Something Wild", which petitioner does not identify. Petitioner deducted $ 2,925 for legal and professional fees. He concedes that $ 885 paid to Paul Voiland did not relate to the software. He paid $ 1,140 to Nordli Wilson Co., which he testified was for the company to interview a nutritionist for him to hire. Petitioner paid $ 900 to Drew Conklin, a band manager, which petitioner testified was for Conklin to research nutrition and to help develop the software. Petitioner's general claims relating to these payments are not convincing. Petitioner did not explain the research conducted, or how it related to development of software, and he did not provide witnesses or documentary evidence to corroborate his claims. Petitioner did not have written agreements with Conklin or Nordli Wilson Co., and he did not record the reasons for the payments on the checks. Petitioner deducted $ 465 for dues and publications. He testified that he read journal articles on how to present nutrition information so that people could easily understand it. However, he did not say which journals he read or how he *584 used this information to develop his software. Petitioner concedes that his advertising expense is not deductible under section 174. He deducted $ 314 for travel expenses and $ 23 for dinner. He did not explain how these expenses related to his development of a computer software program. Petitioner deducted $ 1,228 for utility expenses. He concedes that $ 206 of it does not relate to the development of software. Petitioner testified that he used one of the seven rooms in his house for files and computer displays for this project. Petitioner did not say how many hours he spent in that room or how it related to developing software. Petitioner's testimony was vague and uncorroborated. As stated by the United States Court of Appeals for the Third Circuit: There is no question that taxpayer's uncontradicted testimony * * * [is] sufficient to establish that the Commissioner's determination * * * was erroneous. However, the Tax Court * * * [is] not bound to accept taxpayer's uncontradicted testimony if it * * * [finds] the testimony to be improbable, unreasonable or questionable. * * * [Citations and fn. refs. omitted.]
Demkowicz v. Commissioner, 551 F.2d 929, 931 (3d Cir. 1977), *585 revg. T.C. Memo. 1975-278. Petitioner's testimony did not convince us that any of these expenses are deductible as research or experimental expenses under section 174. We sustain respondent's disallowance of petitioner's claimed $ 9,687 in research and experimental expenses. 3. Self-Employment Taxes
Section 1401 imposes a tax on net earnings of $ 400 or more from self-employment income, defined as gross income derived from carrying on a trade or business, less allowable deductions. Sec. 1402(a) and (b). The parties agree that petitioner is liable for self-employment taxes if we find that he had unreported income. We have so found. Thus, petitioner is liable for self-employment taxes under section 1401. 4. Addition to Tax for Substantial Understatement of Tax Under Section 6661
Respondent determined that petitioner is liable for an addition to tax for substantial understatement of income tax under section 6661 for 1987. Section 6661(a) imposes an addition to tax of 25 percent of any underpayment attributable to a substantial understatement of income tax. A substantial understatement exists if for any year the amount of understatement *586 exceeds the greater of 10 percent of the amount required to be shown on the return or $ 5,000. Sec. 6661(b)(1); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989). Petitioner substantially understated his income tax for 1985. Petitioner is liable for this addition to tax unless he meets one of the exceptions. If a taxpayer has substantial authority for the tax treatment of any item on the return, the understatement is reduced by the amount attributable thereto. Sec. 6661(b)(2)(B)(i). Similarly, the amount of the understatement is reduced for any item adequately disclosed on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii). Petitioner offers no authority for his position, and he did not disclose any facts pertaining to the income with his returns. Therefore, these exceptions do not apply. Respondent may waive this addition if the taxpayer shows reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c). Petitioner argues that he had reasonable cause for the understatement of $ 42,609 in interest income, and that this omission from income was inadvertent and in good *587 faith. However, he did not convince us of either of these points. Petitioner is well versed in financial matters. We do not believe he would inadvertently omit $ 42,609 in interest income. Thus, we sustain respondent's determination that petitioner is liable for the addition to tax under section 6661 for 1985. To reflect the foregoing, Decision will be entered under Rule 155.